IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Paul Alan LeROSE, Attorney at Law.

Supreme Court

*No. 92–1092–D. Submitted on briefs April 12, 1994.—Decided
April 20, 1994.*

(Also reported in 514 N.W.2d 412.)

For the Board of Attorneys Professional Responsi-
bility there were briefs by *Frank R. Terschan* and
*Slattery & Hausman, Ltd.,* Milwaukee.

For Paul Alan LeRose there was a brief by *Martin I. Hanson* and *Hanson, Gasiorkiewicz & Weber, S.C.,* Racine.

PER CURIAM.   *Attorney disciplinary proceeding; attorney's license revoked.*

This is an appeal by the Board of Attorneys Professional Responsibility (Board) from the recommendation of the referee that the court suspend the license of Attorney Paul LeRose to practice law in Wisconsin for 18 months as discipline for professional misconduct. That misconduct occurred from 1986 through 1990 and consisted of retaining funds belonging to two law firms where he was employed, one of which pursued criminal proceedings that resulted in his criminal conviction, misrepresenting amounts paid by clients to one of those law firms, failing to perform postconviction work on behalf of a client he was appointed by the State Public Defender to represent and submitting a false payment voucher for work he claimed to have done in the matter, misrepresenting to the client's successor attorney his work in the matter and a statement he attributed to a judge at the hearing and submitting a false payment voucher to his law firm to support his claim to entitlement to fees in the postconviction matter. The Board contended that the nature and pattern of the misconduct warrant the revocation of Attorney LeRose's license to practice law. Attorney LeRose cross-appealed, contending that a 60-day license suspension is appropriate discipline.

We determine that the totality of his professional misconduct, its seriousness and its repetition warrant the revocation of Attorney LeRose's license to practice law. By that misconduct, he has established that he

cannot be entrusted with funds belonging to others and has demonstrated a propensity to lie in order to obtain money to which he is not entitled and to cover up his misconduct. Contrary to his assertions that his medical condition mitigates the seriousness of his misconduct and the severity of discipline to be imposed for it, there is no evidence nor was there a finding that his medical condition caused or was in any way connected with his professional misconduct.

Attorney LeRose was admitted to practice law in Wisconsin in 1986 and practices in Kenosha. He has not previously been the subject of a disciplinary proceeding. The referee, the Hon. Robert McGraw, reserve judge, made findings of fact based on the Board's amended complaint, as Attorney LeRose pleaded no contest to eight of the nine counts set forth in that complaint and the referee rejected as "completely incredible" Attorney LeRose's testimony contradicting the allegations of the remaining count.

The misconduct allegations that Attorney LeRose contested concerned his unauthorized retention of funds belonging to a law firm at which he was employed. After his employment with a LaCrosse law firm was terminated for what was termed "unjustified inaccuracies" in his office expenses, Attorney LeRose was hired by a law firm in Kenosha. There was no written employment agreement with that firm but an oral agreement specified that all client files were the law firm's property and all fees earned by Attorney LeRose belonged to the law firm.

In May, 1989, the Kenosha law firm's bookkeeper noticed discrepancies in Attorney LeRose's billing and collection practices. Subsequent investigation disclosed that on numerous occasions he had fraudulently misdirected to his own use monies and fees belonging

to the law firm and misrepresented to the firm the amounts clients had paid him, indicating less than full payment and retaining the difference for his own purposes. On several occasions, he endorsed, cashed and diverted to his own use fee checks made payable to him without notifying the firm that he had received the checks.

When confronted by the firm's partners, Attorney LeRose initially gave no explanation but he subsequently stated that he was attempting to help a friend who had gotten into trouble for failing to pay gambling debts. The law firm terminated Attorney LeRose's employment shortly thereafter. Further investigation following his termination disclosed numerous instances in which clients on whose cases Attorney LeRose had been working claimed they had paid fees to him but those fees were never turned over to the firm. Attorney LeRose may have converted as much as $4,360 of firm monies but the firm was able to document only $2,660 of converted funds.

Rejecting Attorney LeRose's testimony that he had made an arrangement with one of the firm partners, who had since died, authorizing him to take on legal work for the firm's clients other than that for which the firm had been retained and permitting him to retain fees generated by that work, the referee concluded that Attorney LeRose's conduct in the matter involved dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[1]

---

[1] SCR 20:8.4 provides:

**Misconduct**
    It is professional misconduct for a lawyer to:
    . . .
    (c)   engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

The remaining findings of the referee concerned misconduct allegations to which Attorney LeRose pleaded no contest. In January, 1989, while employed at the same Kenosha law firm, Attorney LeRose was appointed by the State Public Defender to represent a man seeking postconviction relief. The client wrote numerous letters to Attorney LeRose over the next six months requesting action on his appeal and postconviction relief and in May and June of 1990 wrote numerous letters to the Public Defender complaining that Attorney LeRose had not responded to any of his letters and did not contact him or undertake any activity related to his legal matter. Although he made representations to the contrary, Attorney LeRose did not file an appeal or a request for sentence modification in the client's matter, nor did he tell the client why he had not done so. As a result of his neglect of the matter, the time for filing an appeal expired and the client's successor attorney had to file a motion to enlarge time. The referee concluded that Attorney LeRose failed to act with reasonable diligence and promptness in representing that client, in violation of SCR 20:1.3,[2] and failed to keep his client reasonably informed regarding the status of the matter and promptly comply with the client's reasonable requests for information, in violation of SCR 20:1.4.[3]

---

[2] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

[3] SCR 20:1.4 provides:

**Communication**
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

In the same matter, Attorney LeRose submitted a payment voucher to the State Public Defender's office in which he itemized actions he had taken on behalf of the client, including in it the preparation of a motion for a sentence modification hearing and attendance at that hearing. The court file disclosed that no motion of that kind ever had been filed nor was a hearing held on the date specified in Attorney LeRose's voucher or at any other time subsequent to the client's sentencing. Further, there were no motion papers or sentence modification drafted by Attorney LeRose in the court file, in the district attorney's file or in the client's possession.

In the "disposition summary" portion of the voucher, Attorney LeRose stated that the court had denied the client's request for relief and that the client agreed not to pursue the matter further. The client, however, denied that any conversation with Attorney LeRose ever took place and that he ever indicated to him that he did not want to pursue an appeal. When the client's successor counsel confronted Attorney LeRose with the fact that there was no evidence other than his voucher that he ever had filed a motion for sentence modification on the client's behalf, Attorney LeRose said he did file a motion for sentence modification on April 5, 1989, and that he had taken notes at the hearing on that motion which indicated that the file material had been lost and that at the hearing the judge had stated, "[There was] no way on God's green earth that any such motion would be granted. I should have given him more time than I did." The judge denied that he had made any of the statements Attorney LeRose attributed to him. The referee concluded that Attorney LeRose's misrepresentations on the payment voucher, his misrepresentation of facts to the client's successor counsel and his misrepresentation of state-

ments he attributed to the circuit judge constituted conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of SCR 20:8.4(c).

While appointed to represent that criminal defendant, Attorney LeRose understood that all fees earned by him, including those in public defender appointments, belonged to the law firm at which he was employed. After his employment with the firm was terminated on May 26, 1989, one of the partners demanded an accounting of monies due the firm from cases on which he had worked, including this appointment. Attorney LeRose gave the partner a copy of a voucher he purportedly had submitted to the Public Defender, dated August 1, 1989, setting forth approximately 27 hours of out-of-court work in the matter, all of which as having been performed between June 6 and July 11, 1989, after his employment with the firm had been terminated. For that reason, Attorney LeRose asserted that he was not obligated to turn over to the law firm any of the $948.50 fee he earned in the matter. However, the voucher he gave the partner was not the same as the one he had submitted to the Public Defender, which was dated July 11, 1989, and set forth 25.8 hours of out-of-court work and one hour of in-court work, all but 1.2 hours of which was performed prior to the date of his termination. The referee concluded that Attorney LeRose's submission of a fabricated payment voucher to the law firm in order to avoid having to turn over $906 in attorney fees constituted conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of SCR 20:8.4(c).

In June, 1989, Attorney LeRose obtained employment with another law firm in Kenosha and the terms of the written employment contract established an annual salary plus a percentage of gross receipts as the

sole basis of his compensation. The contract further specified that all client files were the property of the firm and that Attorney LeRose was to serve the firm faithfully and not engage in any practice of law other than through the firm.

In November, 1989, while employed at that firm, Attorney LeRose was retained to represent a man in a criminal matter. In March, 1990, the client's wife paid the $1,000 balance owing to the firm for Attorney LeRose's services by check payable to Attorney LeRose. Rather than following the established procedure and delivering the check to the firm for restrictive endorsement and deposit in the firm's account, Attorney LeRose endorsed the check in his own name and deposited it in his personal account. The referee concluded that his doing so constituted conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of SCR 20:8.4(c).

Attorney LeRose's employment with the second law firm was terminated in June, 1990 and a criminal complaint was filed March 8, 1991, charging him with one count of felony theft, based on his endorsing and depositing into his own account the $1,000 check in payment of the law firm's client's fees. Attorney LeRose pleaded no contest to an amended charge of criminal damage to property (the check), a misdemeanor. Upon conviction, he was placed on two years' probation, fined and ordered to perform 150 hours of community service and continue medical treatment. The referee concluded that the conduct underlying Attorney LeRose's conviction constituted a criminal act that reflects adversely on his honesty, trustworthiness and fitness as a lawyer, in violation of SCR 20:8.4(b).[4]

---

[4] SCR 20:8.4 provides:

In making his recommendation of an 18-month license suspension, the referee acknowledged but made no finding in respect to Attorney LeRose's claim that he was suffering from manic depression. In addition to the license suspension, the referee recommended that Attorney LeRose be required to pursue medical treatment, with reports of that treatment provided periodically to the Board.

We adopt the referee's findings of fact and conclusions of law and determine that the serious nature of Attorney LeRose's professional misconduct and its repetition warrant the revocation of his license to practice law. Attorney LeRose's arguments in his cross-appeal that he retained fees from one of the law firms in a good faith belief that he had reached an oral agreement with one of the firm's partners that he could work on his own cases and keep for himself fees they generated and that he never intentionally misappropriated law firm funds have no merit. The referee rejected those same arguments.

Also without merit is Attorney LeRose's contention that his medical condition, diagnosed as a manic-depressive disorder, should be considered a mitigating factor in determining the severity of discipline to be imposed for his misconduct. His assertion that there is "clearly a nexus" between his misconduct and his medical condition is without foundation in the record. The testimony of the psychiatrist who had diagnosed Attorney LeRose's condition made no causal connection between that condition and the professional miscon-

**Misconduct**
It is professional misconduct for a lawyer to:

. . .

(b)   commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

duct. Attorney LeRose's suggested inference that the referee found a causal connection between the two from the fact that he recommended imposition of a medical treatment condition is unsupported in the record. It appears that the referee recommended the medical condition out of concern that Attorney LeRose's medical condition might present a danger to clients, the courts and the public if he were to resume practice following the recommended period of suspension.

Because we revoke Attorney LeRose's license to practice law as discipline for misconduct, imposition of a medical treatment condition is unnecessary. At such time as Attorney LeRose seeks reinstatement of his license, it will be incumbent upon him to establish that he is not suffering from a medical condition that would impair his practice of law and put at risk his clients, the court and the public.

IT IS ORDERED that the license of Paul A. LeRose to practice law in Wisconsin is revoked as discipline for professional misconduct, effective May 16, 1994.

IT IS FURTHER ORDERED that within 60 days of the date of this order Paul A. LeRose pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that Paul A. LeRose comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.