IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Robert S. SOSNAY, Attorney at Law.

Supreme Court

*No. 95–0814–D. Submitted on briefs April 10, 1997.—Decided
May 1, 1997.*

(Also reported in 562 N.W.2d 137.)

Attorney disciplinary proceeding. *Attorney's license revoked.*

For Robert S. Sosnay there was a brief by *Martin E. Kohler* and *Kohler & Hart*, Milwaukee.

For the Board of Attorneys Professional Responsibility there was a brief by *Jeananne L. Danner*, counsel.

¶ 1.   PER CURIAM.   Attorney Robert S. Sosnay appealed from the referee's recommendation that the court revoke his license to practice law in Wisconsin as discipline for professional misconduct. That misconduct consisted of conversions of client funds in his trust account, misrepresentations to clients concerning the results of matters he pursued on their behalf, paying clients money under false pretenses, failing to exercise his professional judgment on behalf of clients and neglecting their legal matters, repeatedly ignoring clients' requests for information concerning their legal matters, and numerous failures to respond to requests for information from the Board of Attorneys Professional Responsibility (Board) and from the district professional responsibility committee investigating client grievances.

¶ 2.   In this appeal, Attorney Sosnay did not contest the referee's findings of fact and conclusions of law concerning his misconduct. He contended, however, that the referee erred in determining that his psychological condition—dysthymia—was not a factor properly to be considered in mitigation of discipline to be imposed for that misconduct.

¶ 3.   The determination that Attorney Sosnay's psychological condition did not constitute a mitigating factor is based on the referee's factual finding that the

condition was not established as a cause of that misconduct. Absent a causal connection between an attorney's medical condition and that attorney's professional misconduct, the medical condition may not be considered a factor mitigating either the seriousness of the misconduct or the severity of discipline to be imposed for it. *In re Disciplinary Proceedings Against LeRose*, 182 Wis. 2d 595, 603–04, 514 N.W.2d 412 (1994).

¶ 4. On appeal, we will not reject a referee's finding of fact unless it is clearly erroneous. Here, the referee's finding that the evidence failed to establish that Attorney Sosnay's dysthymia caused most, if not all, of his professional misconduct has ample support in the record. Accordingly, we adopt that finding and accept the referee's consequent determination that Attorney Sosnay's psychological condition was not a factor to be considered in mitigation of the severity of discipline to impose for that misconduct. Before addressing that determination at greater length, we set forth the referee's findings of fact and conclusions of law concerning Attorney Sosnay's professional misconduct, findings and conclusions that are not contested in this appeal.

¶ 5. Attorney Sosnay was admitted to practice law in Wisconsin in 1973 and practices in Milwaukee. He has been disciplined for professional misconduct three times. In 1984, the Board privately reprimanded him for dishonesty in having accepted full payment of a mortgage and disbursing that payment to his client but failing for 10 months thereafter to respond to the mortgagor's request for a mortgage satisfaction. In 1988, the court suspended his license to practice law for 90 days as discipline for neglect of client legal matters, failure to respond to numerous inquiries from the Board during its investigation of client grievances and

appear before the Board in those matters, and continuing to practice law while ineligible to do so as a result of nonpayment of State Bar dues. *In re Disciplinary Proceedings Against Sosnay*, 146 Wis. 2d 709, 431 N.W.2d 673 (1988). In 1991, after the Board had commenced a disciplinary proceeding against him, Attorney Sosnay consented to a Board-imposed public reprimanded for his neglect of a client's legal matter and failure to respond to the client's numerous telephone and written requests for information concerning it.

¶ 6. The referee in this instant proceeding, Attorney Jean DiMotto, found that Attorney Sosnay engaged in professional misconduct in several matters, based on the allegations of the Board's third amended complaint, to which he pleaded no contest, and the parties' stipulation. The first matter concerned Attorney Sosnay's representation of a client on a personal injury claim, for which he was retained in November, 1987. Despite his belief that he would not be able to prove the client's claim, Attorney Sosnay filed an action on the client's behalf in September, 1990. When he failed to furnish a witness list, a permanency report, and an itemization of special damages required by the court's scheduling order, the court precluded him from calling any witnesses at trial or asserting any claim for permanency or medical expenses and dismissed the action, awarding costs to the defendants. Attorney Sosnay then misrepresented to his client that he had obtained $7500 in the action and would pay it to the client in $250 monthly installments. He paid the client some $5000 under that arrangement and testified that he had done so because he felt sorry for the client, thought he would be unable to accept the outcome of the litigation, and wanted to encourage the client to resume his education.

¶ 7.  In April, 1988, that same client had asked Attorney Sosnay to represent him on another personal injury claim. Notwithstanding advice he had obtained from another attorney to the effect that the client had no cause of action against the purported defendants and similar advice from an assistant district attorney he had asked to review the police file, Attorney Sosnay, assertedly "against his better judgment," commenced an action on the client's claim in September, 1990.

¶ 8.  In March, 1993, the client filed a grievance with the Board asserting that he had not learned of the dismissal of the first personal injury action for two and one-half years and after Attorney Sosnay had paid him thousands of dollars and that Attorney Sosnay would not give him his file in the matter after he discharged him. The client also asserted in a separate grievance that Attorney Sosnay would not give him copies of the court papers in the second action and, despite numerous requests, refused to return his file. Attorney Sosnay did not respond to the Board's request for a reply to the grievances or to the letters from the district professional responsibility committee to which the matter had been referred for investigation. He ultimately replied at the end of September, 1993 but, despite two letters from the committee's investigator, delayed turning over the client's file until the middle of November, 1993.

¶ 9.  The referee concluded that by filing a lawsuit on a claim knowing it was unprovable, Attorney Sosnay knowingly advanced a factual position which had no basis, in violation of SCR 20:3.1(a)(2).[1] His fil-

---

[1] SCR 20:3.1 provides, in pertinent part:

**Meritorious claims and contentions**
(a)  In representing a client, a lawyer shall not:
. . .

ing the second action contrary to his own professional judgment and then failing to prosecute it constituted a failure to exercise independent professional judgment in representing a client, in violation of SCR 20:2.1.[2] His payments to the client purporting to be settlement proceeds from the first action constituted conduct involving dishonesty, deceit and misrepresentation, in violation of SCR 20:8.4(c).[3] His failure to inform the client for a period of 15 months of the dismissal of the second action violated SCR 20:1.4(a)[4] as a failure to keep a client reasonably informed of the status of a matter. His failure to release the client's files despite repeated requests to do so violated SCR 20:1.16(d).[5]

(2) knowingly advance a factual position unless there is a basis for doing so that is not frivolous;

[2] SCR 20:2.1 provides, in part:

**Advisor**
In representing a client, a lawyer shall exercise independent professional judgment and render candid advice.. . .

[3] SCR 20:8.4(c) provides:

**Misconduct**
It is professional misconduct for a lawyer to:

. . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

[4] SCR 20:1.4(a) provides:

**Communication**
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

[5] SCR 20:1.16(d) provides:

**Declining or terminating representation**

. . .
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time

Finally, his repeated failure to respond to inquiries from the Board and his delay in turning over the client's files constituted a failure to cooperate with and provide information to the Board during its investigation of a grievance, in violation of SCR 21.03(4)[6] and 22.07(2) and (3).[7]

¶ 10.  In another matter, Attorney Sosnay was retained in July, 1989 to investigate a claim of defects

for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[6] SCR 21.03(4) provides:

**General principles.**

. . .

(4)  Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

[7] SCR 22.07 provides, in pertinent part:

**Investigation.**

. . .

(2)  During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

(3)  The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

in a home a couple had purchased. The following month, he told the clients they had a cause of action against the sellers and that he could recover at least $12,000 in damages for them. He provided no written fee agreement, but the clients paid him $600 for filing fees and inspection costs in addition to the $50 they had given him for his initial investigation of their claim, all of which he deposited into his law office account.

¶ 11.   For the next two years, Attorney Sosnay did not return numerous telephone calls from the clients or meet with them as they had arranged. The few times they reached him, he said he needed more time to proceed with the case. After the couple left the country in August, 1992, the person to whom they had given power of attorney was unsuccessful in attempting to reach Attorney Sosnay, although the clients had given him that person's name and address. Attorney Sosnay did not respond to an April, 1993 registered letter the clients sent him from overseas asking about their lawsuit and expressing concern that they had not heard of any progress during the preceding four years.

¶ 12.   It was not until they filed a grievance with the Board in November, 1993, that the clients learned that Attorney Sosnay had not commenced an action on their behalf. Attorney Sosnay did not respond to the Board's request for information concerning that grievance or to the district committee asking for a response. At the hearing in this disciplinary proceeding, Attorney Sosnay gave the clients a check for $1200 in repayment of the $650 they had paid him in 1989, plus interest.

¶ 13.   The referee concluded that Attorney Sosnay's failure to reduce to writing his fee agreement with the client stating the method by which his fee was

to be determined violated SCR 20:1.5(c).[8] His failure to perform services other than a brief initial investigation of the client's claim for over four years constituted a failure to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.[9] His failure for over four years to respond to the client's requests for information and inform them of the status of their matter violated SCR 20:1.4(a), and his deposit of the funds they advanced for costs into his business account rather than a client trust account constituted a failure to hold client property in trust separate from his own property, in violation of SCR 20:1.15(a).[10] Attorney Sosnay's repeated failure to

---

[8] SCR 20:1.5 provides, in pertinent part:

**Fees**

. . .

(c)   A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

[9] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

[10] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property.**
(a)   A lawyer shall hold in trust, separate from the lawyer's own property, property of clients or third persons that is in the lawyer's possession in connection with a representation. All funds

249

respond to written inquiries from the Board in this matter violated SCR 21.03(4) and 22.07(2) and (3).

¶ 14.   In 1985, a client retained Attorney Sosnay to recover $40,000 he had paid for a store franchise, paying him $200 to review the franchise contract and render an opinion. Attorney Sosnay was aware of the franchisor's subsequent filing for bankruptcy but filed no claim on behalf of the client because he believed it was a no asset bankruptcy. Consequently, any debt the franchisor might have had to the client was discharged. Attorney Sosnay never told the client that in his opinion a lawsuit would not be successful.

¶ 15.   Notwithstanding that opinion, Attorney Sosnay, under pressure from the client, filed an action on the client's behalf, which was dismissed without prejudice when the complaint was served improperly. A second action Attorney Sosnay filed three years later was dismissed for failure to prosecute. While the second case was still on the dismissal calendar, Attorney Sosnay commenced a third action but failed to file a witness list and answer requests for admission. He also did not appear for trial, with the result that the case was dismissed with prejudice and $100 costs awarded to the defendant.

¶ 16.   Attorney Sosnay then misrepresented to his client that he had obtained a $40,000 judgment against the defendant, which he had secured by filing a lien against property of a relative of the defendant.

<hr>

of clients paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c) maintained in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin, which account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import, and no funds belonging to the lawyer or law firm except funds reasonably sufficient to pay account service charges may be deposited in such an account. . . .

Although he knew he would be the one making the payments, Attorney Sosnay told his client the $40,000, plus interest, would be paid in monthly installments over several years and "negotiated" with the client the amount of the monthly payments, "settling" on $600. Attorney Sosnay made those payments from funds in his client trust account. He asserted that he undertook to pay the client because he felt sorry for him and because the client was pressuring him by repeatedly calling him for information on the progress of his claim.

¶ 17. When the client did not receive the monthly payments regularly, he told Attorney Sosnay to commence foreclosure proceedings on the property securing the judgment. He also wrote Attorney Sosnay in January, 1992 complaining that many of the payment checks were late and that two of them had been returned for insufficient funds. In March, 1994, when the payments were $3000 in arrears, the client told Attorney Sosnay that he had retained other counsel to represent him in the matter and asked him to send his file to that attorney. Attorney Sosnay did not do so, and when he received a demand for the client's file from successor counsel, he insisted he would not release it until the attorney met with him in person so he could explain what had transpired in the matter, but the attorney refused to meet with him.

¶ 18. When he responded to the Board's requests for information concerning the client's grievance and for his trust account records, Attorney Sosnay's tardy reply did not furnish those records or answer the Board's question regarding the delivery of the client's file to successor counsel. When he brought the client's file to an investigative meeting with Board staff, he said he was unable to locate the requested trust account records but asserted that he had paid the client

251

approximately $22,000 from his client trust account but had not kept an accounting of those payments. He did not respond, however, to the Board's inquiry concerning his payment of the client from trust account funds when he never had received funds belonging to the client and asking whose funds were used to make those payments. Although he had used trust account funds to pay the client, Attorney Sosnay certified on his State Bar dues statement in each of five relevant years that he had maintained his client trust account in accordance with the court's rules.

¶ 19. The referee concluded that by filing an action on behalf of the client against his own professional judgment and in response to client pressure, an action he then failed to prosecute because of his professional doubts about its merits and the collectibility of any judgment, Attorney Sosnay failed to exercise independent professional judgment in representing the client, in violation of SCR 20:2.1. His failure to inform the client that the case had been dismissed and $100 costs assessed against him, misrepresenting to him that he obtained a $40,000 judgment, together with the judgment debtor's agreement to pay the judgment, and a lien against the relative's real estate, and making payments of almost $22,000 purportedly from the defendant, Attorney Sosnay engaged in conduct involving dishonesty, deceit and misrepresentation, in violation of SCR 20:8.4(c). His failure to promptly return the client's file after the client terminated his representation, despite repeated requests from the client, successor counsel, and the Board, violated SCR 20:1.16(d). His failure to reply fully to the Board's inquiries concerning the client's grievance and respond at all to subsequent inquiries about trust account payments to the client violated SCR 21.03(4) and 22.07(2)

and (3). Attorney Sosnay's failure to keep complete trust account records in respect to payments to this client and his false certifications that he maintained his client trust account in accordance with the applicable rules violated SCR 20:1.15(e) and (g).[11]

---

[11] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

. . .

(e)   Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursements journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

. . .

(g)   A member of the State Bar of Wisconsin shall file with the State Bar annually, with payment of the member's State Bar dues or upon such other date as approved by the Supreme Court, a certificate stating whether the member is engaged in the private practice of law in Wisconsin and, if so, the name of each bank, trust company, credit union or savings and loan association in which the member maintains a trust account, safe deposit box, or both, [and] shall explicitly certify therein that he or she has complied with each of the record-keeping requirements set forth in paragraph (e)

¶ 20. In October, 1992, a client Attorney Sosnay represented on appointment by the State Public Defender (SPD) was found guilty and sentenced to prison. After the client informed the court of his intent to seek postconviction relief, the SPD wrote Attorney Sosnay to file a formal notice for the client and offered to assist him in doing so. Even though the SPD told him it could not appoint counsel to represent the client in postconviction matters until the proper form had been filed with the trial court, Attorney Sosnay never filed that form. In addition, he did not respond to three requests from the Board for a reply to the client's grievance. The referee concluded that Attorney Sosnay failed to act with reasonable diligence and promptness in representing this client, in violation of SCR 20:1.3, and his failure to respond to the Board violated SCR 21.03(4) and 22.07(2) and (3).

¶ 21. In the summer of 1994, Attorney Sosnay was retained to represent a client seeking postconviction relief following conviction on an Alford plea. Attorney Sosnay reviewed the trial court file, spoke to the prosecutor, met once with the client while he was incarcerated, and spoke with the client's wife by telephone and in person. He did not, however, obtain or review the hearing transcript or contact trial counsel to obtain documents he had requested. Despite his belief that there was no factual basis for it, he filed a motion to withdraw the client's Alford plea, alleging that the client had been represented ineffectively at trial. He testified that he had taken that action because the client's wife repeatedly insisted that he file something in the matter. The motion was denied in December, 1994 without a hearing, as it raised no factual issue but

hereof.. . .The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action. . . .

254

set forth only conclusory allegations. Attorney Sosnay did not respond to three letters from the Board asking for a reply to the client's grievance and, although he appeared at an investigative interview, he did not return to that interview after it was adjourned at his request.

¶ 22. The referee concluded that by filing a motion because of pressure to do so from the client's wife, when in his professional judgment there was no basis for it, Attorney Sosnay failed to exercise independent professional judgment in representing a client, in violation of SCR 20:2.1. His repeated failure to respond to Board requests for information about the client's grievance violated SCR 21.03(4) and 22.07(2) and (3).

¶ 23. In May, 1994, Attorney Sosnay was retained to represent a man on three traffic citations. He resolved two of them with a plea, resulting in his client's conviction and incarceration. After the client appeared on his own behalf and entered a not guilty plea on the third citation and, following several adjournments at Attorney Sosnay's request, the case was called for trial, Attorney Sosnay did not appear. As a result, the court issued a bench warrant for the client and forfeited the bail he had posted. When the client was released from incarceration on the other charges, he was arrested immediately on the bench warrant and held in jail over the Thanksgiving weekend.

¶ 24. When the client's father called Attorney Sosnay to tell him his son was in jail on the bench warrant, Attorney Sosnay said he would obtain his release the following Monday. On that day, he faxed the court a request for the client's release on the ground that neither he nor the client had received notice of the adjourned court date. The court released the client and set a new hearing date, but Attorney Sosnay did not

appear, and another bench warrant was issued for the client. Shortly thereafter, the case was again called, and successor counsel appeared on the client's behalf.

¶ 25. Attorney Sosnay did not reply to two letters from the Board requesting a reply to the client's grievance, which alleged, among other things, that he had told the client and his father that he had arranged with the prosecutor that his client would receive a 10-day jail sentence on the third citation to be served concurrently with his incarceration on the other two charges. The prosecutor informed the Board that there never had been communication from Attorney Sosnay in which that disposition was discussed or offered. The referee concluded that Attorney Sosnay misrepresented the arrangement to resolve the traffic charge, in violation of SCR 20:8.4(c), and that his failure to respond to Board requests for information about the client's grievance violated SCR 21.03(4) and 22.07(2) and (3).

¶ 26. Between January, 1993 and May, 1994, Attorney Sosnay did not respond to requests from the Board and from the district professional responsibility committee for information concerning the grievances of four clients. The referee concluded that Attorney Sosnay's failure to respond to the requests of the Board and the district committee violated SCR 21.03(4) and 22.07(2) and (3).

¶ 27. On seven occasions between December, 1991 and November, 1993, Attorney Sosnay deposited a total of $2664 belonging to him or to his wife into his trust account and deposited an additional $5650 in cash into that account. None of those deposits was designated as belonging to any client. The referee concluded that the commingling of funds belonging to

Attorney Sosnay and to his wife with client funds in his trust account violated SCR 20:1.15(a).

¶ 28.   In mid-August, 1991, Attorney Sosnay deposited into his trust account a $56,000 personal injury settlement he had obtained for a client. He disbursed $35,000 of that amount to the client, paid himself fees of $8900, and paid medical expenses and other costs related to the matter. Thereafter, he disbursed from the remainder of the proceeds $10,000 to a person unconnected with the client's matter but to whom Attorney Sosnay owed money on a personal loan. A portion of that $10,000 represented legal fees to which Attorney Sosnay was entitled.

¶ 29.   Attorney Sosnay did not produce all of the trust account records requested by the Board during its investigation. Records he did produce and those obtained by the Board from the bank where his trust account was maintained showed that as of June 3, 1994, there was a negative balance in that account for 23 clients amounting to $28,225, thus establishing that Attorney Sosnay had disbursed money on behalf of a client either when there were no funds for that client in the account or when the client's funds in the account were less than the amount he disbursed. An audit also revealed that as of that date, 31 clients had positive balances totaling $46,316, but the actual balance in that account on that date was only $124. Between November, 1991 and April, 1994, Attorney Sosnay overdrew his client trust account 32 times, in amounts of up to $4596. On numerous occasions, he paid money from his trust account to third parties who had no money on deposit in that account but were persons to whom he personally owed money. Attorney Sosnay did not keep a record or ledger of deposits made to his trust account, a complete and accurate ledger of disburse-

ments from it, or a subsidiary ledger for each client having funds on deposit in that account.

¶ 30. The referee concluded that by failing to submit complete trust account records to the Board at its request, Attorney Sosnay violated SCR 20:1.15(f).[12] His failure to keep required trust account records violated SCR 20:1.15(e). His use of funds from his trust account to pay third parties to whom he was personally indebted constituted conduct involving dishonesty, deceit and misrepresentation, in violation of SCR 20:8.4(c).

¶ 31. In January, 1993, Attorney Sosnay filed an application for informal administration of the estate of an elderly relative. He took no further action in the matter for the next eight months, prompting the court to issue an order to show cause for his failure to file an inventory. Between February 1 and March 25, 1993, Attorney Sosnay deposited over $268,000 of estate proceeds into his trust account, and on March 26, disbursed $210,000 of those proceeds to the principal heir.

¶ 32. Between the end of January, 1993, when the informal probate was commenced, and the end of August, 1993, when the court issued the order to show cause, Attorney Sosnay disbursed to himself on seven

---

[12] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

. . .

(f) Upon request of the Board of Attorneys Professional Responsibility, or upon direction of the Supreme Court, the records shall be submitted to the board for its inspection, audit, use and evidence under such conditions to protect the privilege of clients as the court may provide. The records, or an audit thereof, shall be produced at any disciplinary proceeding involving the attorney wherever material. Failure to produce the records shall constitute unprofessional conduct and grounds for disciplinary action.

occasions a total of $15,500 of estate funds from his trust account, of which $6300 was designated as fees and $200 as a reimbursement. The remaining $9000 was disbursed to him without documenting any basis for it. The referee found that this amount could not reasonably be considered legal fees in light of the amount of fees Attorney Sosnay already had taken and the small amount of legal work done during this period.

¶ 33.   Between March and October, 1993, Attorney Sosnay made 16 disbursements of estate funds from his trust account to himself and to the client to whom he was making monthly payments purportedly as a result of a $40,000 judgment obtained in the action on the franchise contract. Those disbursements totaled $31,735 and were for purposes unrelated to the estate. During the same period, Attorney Sosnay disbursed $1392 of other client funds held in his trust account for matters unrelated to clients. During the course of this disciplinary proceeding, after he had filed his answer to the third amended complaint in November, 1995, Attorney Sosnay gave the principal heir of the estate a promissory note for $29,000, representing the remaining funds of the estate to which the heir was entitled and which he had used for unrelated purposes.

¶ 34.   The referee concluded that by repeatedly converting estate funds to his own purposes, disbursing estate funds to himself without any documented basis and when they could not reasonably be considered legal fees that he had earned, and disbursing funds belonging to other clients for purposes unrelated to those clients' matters constituted conduct involving dishonesty, deceit and misrepresentation, in violation of SCR 20:8.4(c).

¶ 35.   In this appeal, Attorney Sosnay argued that the referee erred in refusing to consider the evi-

dence he had presented to support his contention that his psychological condition is a mitigating factor on the issue of discipline to be imposed for his professional misconduct. This argument has no merit, as the referee's report addresses that evidence at length.

¶ 36.   The psychologist whom he had consulted in July, 1995, several months after this proceeding was commenced, testified that he had diagnosed Attorney Sosnay as suffering dysthymia—a depression that had gone on for many years. He also testified that Attorney Sosnay has been erratic in attendance at the therapy sessions the psychologist had prescribed, did not engage at all in prescribed therapy sessions with his wife, and has been unwilling to undertake a course of anti-depressant medication the psychologist also had recommended.

¶ 37.   The record disclosed that the psychologist had not seen Attorney Sosnay until long after his misconduct occurred. Moreover, he did not review the records of treatment Attorney Sosnay had sought in 1988 and 1989, at the time of the prior disciplinary proceeding, although he acknowledged that it would have been appropriate to do so. The psychologist did no testing of Attorney Sosnay; his impressions and diagnosis were based solely on his observations of him and the information Attorney Sosnay gave him. The psychologist obtained no corroboration of that information from third persons or from prior treatment records. Further, the psychologist's testimony regarding a connection between Attorney Sosnay's dysthymia and his misconduct was limited to Attorney Sosnay's failure to respond to the Board and to the district committee when asked for information regarding client grievances and to produce his trust account records. It did

not address the numerous other incidents of misconduct established in this proceeding.

¶ 38.   Based on the testimony of the psychologist and Attorney Sosnay's own testimony, the referee found that while the dysthymia "contributed, in varying degrees at varying times, to some of his misconduct," it had not caused any of it. Accordingly, the referee properly declined to consider that psychological condition in mitigation either of the seriousness of Attorney Sosnay's misconduct or the severity of discipline it warrants.

¶ 39.   Having determined that Attorney Sosnay's psychological condition was not properly considered a mitigating factor, the referee recommended that Attorney Sosnay's license to practice law be revoked as discipline for his professional misconduct. The referee also recommended that the court condition reinstatement of his license on his showing that he no longer suffers from the psychological condition to the extent that it would impair his practice of law and put clients, the courts and the public at risk, that he has paid the promissory note he gave to the heir of the estate whose assets he had converted, and that he submit to monitoring and audit of his client trust account for a period of at least two years.

¶ 40.   We determine that the seriousness of Attorney Sosnay's professional misconduct, its nature and extent, and the degree of harm it has caused warrant the recommended license revocation. The referee considered an aggravating factor Attorney Sosnay's "almost complete absence of appreciation of the seriousness of his misconduct." The referee expressed concern that Attorney Sosnay has established a pattern of not acknowledging his wrongdoing but rationalizing it instead as the result of feeling sorry for

clients, trying to protect them, trying to escape from pressure they were exerting on him, and "sloppy" book-keeping. The referee also considered an aggravating factor Attorney Sosnay's prior disciplines for misconduct, some of which was the same kind as established in this proceeding. Finally, the referee considered in aggravation of the misconduct Attorney Sosnay's demonstrated disrespect for the Board and the court's disciplinary process, noting the attitude he expressed during his testimony that he had been singled out by the Board, held to a standard different from that applied to other attorneys, and in general treated unfairly.

¶ 41.   We adopt the referee's findings of fact and conclusions of law concerning Attorney Sosnay's professional misconduct and order the recommended license revocation as discipline for it. In light of his prior discipline, Attorney Sosnay has demonstrated a propensity to repeat and aggravate that misconduct, and his continued practice of law jeopardizes the interests, as well as the property, of his clients.

¶ 42.   IT IS ORDERED that the license of Robert S. Sosnay to practice law in Wisconsin is revoked, effective June 10, 1997.

¶ 43.   IT IS FURTHER ORDERED that reinstatement of the license of Robert S. Sosnay to practice law in Wisconsin shall be subject to the conditions set forth in the referee's report in this proceeding.

¶ 44.   IT IS FURTHER ORDERED that within 60 days of the date of this order Robert S. Sosnay pay to the Board of Attorneys Professional Responsibility the costs of this proceeding.

¶ 45.   IT IS FURTHER ORDERED that Robert S. Sosnay comply with the provisions of SCR 22.26

concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶ 45a.   JANINE P. GESKE, J., did not participate.