IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
John R. DADE, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

John R. DADE, Respondent.

Supreme Court

*No. 2005AP2627–D. Decided June 1, 2007.*

2007 WI 66

(Also reported in 732 N.W.2d 433.)

¶ 1. PER CURIAM. We review the referee's recommendation that the license of Attorney John R. Dade be suspended for a period of 60 days and that he be required, as a condition of the reinstatement of his license, to make "a satisfactory showing to the OLR [Office of Lawyer Regulation] that he has obtained appropriate CLE [continuing legal education] credits in the area of office management and ethics."

¶ 2. Based upon our independent review of the matter, we adopt the referee's findings of fact and conclusions of law. We also agree with the referee's recommendation for a 60–day suspension of Attorney

Dade's license to practice law in this state. We decline, however, to impose the reinstatement condition requested by the OLR and recommended by the referee. Finally, we determine that Attorney Dade should be required to pay the full costs of this disciplinary proceeding, which were $3875.20, as of January 17, 2007.

¶ 3. Attorney Dade was admitted to the practice of law in Wisconsin in 1983 and has been engaged in private practice in Whitewater. In 1991, he received a private reprimand for failing to keep a client reasonably informed about the status of a matter, for failing to act with reasonable diligence and for failing to cooperate with the investigation of the Board of Attorneys Professional Responsibility.

¶ 4. The OLR, by appointed counsel, filed a four-count complaint against Attorney Dade on October 27, 2005. The relevant facts alleged in the complaint are summarized below.

¶ 5. Count 1 involved Attorney Dade's failure to provide information to the OLR. During an investigation concerning a grievance filed by M.F., the OLR requested Attorney Dade to provide certain additional information and documents. Attorney Dade did not respond to the OLR within the requested time period. The OLR then sent another letter, by both certified and first-class mail, seeking a response and reminding Attorney Dade of his obligation to cooperate. When Attorney Dade signed for the certified letter but did not respond, the OLR personally served Attorney Dade with yet another letter. Attorney Dade still did not respond.

¶ 6. The OLR then filed a motion for the temporary suspension of Attorney Dade's license. After this court issued an order to Attorney Dade to show cause why his license should not be temporarily suspended,

he finally submitted his response to the OLR's request for information. He also submitted a separate letter to the court acknowledging that his failure to respond to the OLR's requests could be deemed misconduct under SCR 22.03(6).[1]

¶ 7. The OLR subsequently requested further information from Attorney Dade, but he again did not respond. After the OLR referred the matter to a district committee for further investigation, Attorney Dade did cooperate with that committee.

¶ 8. The OLR's complaint alleged that Attorney Dade's multiple failures to provide written responses to the OLR's requests for supplemental information had violated SCR 22.03(6), thereby also violating SCR 20:8.4(f).[2]

¶ 9. Count 2 related to Attorney Dade's representation of E.D. On July 3, 2001, Attorney Dade was appointed by the circuit court to represent E.D. in connection with charges of three counts of felony failure to pay child support following her 1997 divorce. The state alleged that E.D. was behind in her support payments by over $35,000. On July 5, 2001, E.D. informed Attorney Dade that at her final divorce hearing, the circuit court had ordered her to pay 29 percent of her income as child support, but only if she was employed.

---

[1] SCR 22.03(6) provides: Investigation.

(6) In the course of the investigation, the respondent's willful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[2] SCR 20:8.4(f) states that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

71

¶ 10. Attorney Dade represented E.D. at a hearing before a family court commissioner on July 6, 2001. At that hearing the commissioner determined that the amount of the child support arrearages had to be recalculated and scheduled a further hearing on the subject for October 2001.

¶ 11. Following the hearing, Attorney Dade told E.D. that he would review the court's divorce file, locate the court reporter for the final hearing in the divorce action, and then discuss the criminal charges with the district attorney. Although Attorney Dade believed that there were some child support arrearages, the OLR's complaint alleged that he did not investigate the true amount of the arrearages or obtain a copy of the transcript of the final divorce hearing.

¶ 12. Attorney Dade, on E.D.'s behalf, subsequently negotiated a plea agreement with the state that provided that if E.D. pled guilty to two of the three pending felony counts, the parties would jointly recommend that the court impose no jail time or fine, place E.D. on two years of probation, and require her to pay her child support obligations.

¶ 13. A plea and sentencing hearing was scheduled for July 16, 2001. Prior to the hearing, E.D. and her parents met with Attorney Dade to discuss her case and the plea agreement. E.D. again claimed that the divorce hearing transcript would show that she did not owe any child support. Attorney Dade responded that pursuing the matter and obtaining the transcript would take some time and would be expensive. He said that he could probably obtain a copy of the transcript for $200.

¶ 14. Because E.D. wanted to return to Texas as soon as possible, she chose to proceed with the plea agreement. At the plea hearing, the circuit court ac-

cepted E.D.'s guilty pleas to two felonies, withheld sentence, and placed E.D. on probation for two years.

¶ 15. E.D. subsequently obtained the divorce hearing transcript on her own for $27.71. The transcript showed that E.D. was not obligated to pay child support while she was unemployed.

¶ 16. E.D. asked Attorney Dade to represent her at the October 2001 hearing before the family court commissioner. Attorney Dade agreed to do so and appeared at the hearing. Because of some confusion over the support issue, the hearing was continued until December 6, 2001. At that hearing, the child support agency agreed to reduce the arrears from over $35,000 to $17,000. Attorney Dade subsequently was able to negotiate the arrearage amount to $9000, but E.D. refused to stipulate to that amount because she believed that she owed only approximately $5000. Attorney Dade promised to file a motion to reduce the child support arrearage, but he never did so.

¶ 17. Over the ensuing months, Attorney Dade negotiated an agreement with E.D.'s former husband, who agreed to terminate all of E.D.'s child support arrears and to declare their youngest child to be emancipated. A stipulation was executed in late August 2002 and approved by the family court on September 6, 2002.

¶ 18. During late August, Attorney Dade told E.D. that after the family court matter was resolved in a couple of weeks, he would get the felony convictions against her reversed. He did not, however, take any steps toward that goal.

¶ 19. E.D. believed that if Attorney Dade had pursued her claim that her divorce hearing transcript did not obligate her to pay child support while she was

unemployed, she would have been convicted of at most misdemeanors, instead of the two felonies of which she was actually convicted.

¶ 20. The OLR's complaint alleged that these facts concerning the representation of E.D. showed that Attorney Dade had failed to act with reasonable diligence and promptness in representing a client, contrary to SCR 20:1.3.[3]

¶ 21. Counts 3 and 4 of the complaint relate to Attorney Dade's representation of W.V. in the sale of six parcels of real estate. According to the complaint, after W.V. orally agreed to sell the six parcels to D.A. for $5756.53, Attorney Dade drafted a single page document containing a sales agreement, a closing statement and a buyer's settlement statement. Attorney Dade then drafted warranty deeds transferring each of the parcels to D.A. and his wife. In exchange for W.V. executing the warranty deeds, D.A. paid $5756.53 into Attorney Dade's trust account.

¶ 22. The sales agreement drafted by Attorney Dade and entered into by the parties provided that W.V. was to pay from the sales proceeds any real estate taxes that were due (with the exception of the 2003 taxes) and any lake association fees that were due. W.V. had represented to Attorney Dade and D.A. that the sales proceeds would be sufficient to make these payments. At the closing of the transaction, Attorney Dade stated that he would pay the property taxes for 2001–02 and the lake association dues out of the sales proceeds in his client trust account.

¶ 23. Prior to determining the actual amounts of taxes and lake association fees, Attorney Dade dis-

[3] SCR 20:1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

bursed $600 of the sales proceeds in his trust account to W.V. Attorney Dade also disbursed funds from W.V.'s trust account funds to make payments to the lake association and to make some real estate tax payments. Attorney Dade's tax payments on W.V.'s behalf, however, did not cover all of the delinquent taxes due on the six pieces of property. There remained an outstanding property tax balance on those parcels of $1485.97.

¶ 24. In February 2003, Attorney Dade disbursed $515 to an individual that W.V. had designated, $900 to his law office, and $800 to W.V. himself. If Attorney Dade had used these trust account funds to pay the delinquent taxes, they would have been sufficient to cover the entire outstanding tax balance on the properties, as required by the sales agreement and as Attorney Dade had represented he would do.

¶ 25. In addition, neither Attorney Dade nor W.V. recorded the warranty deeds for the six parcels with the register of deeds. They also did not complete Wisconsin Transfer Tax Returns and pay the appropriate transfer tax fees.

¶ 26. In March 2003 and May 2004, Attorney Dade issued additional checks out of his trust account debited against W.V.'s account. One of the checks was payable to W.V., and one was payable to a police department as a "cash bond" for W.V.

¶ 27. In the end, Attorney Dade disbursed to various payees more funds from his trust account than the proceeds from the sale of the properties. Because of funds belonging to W.V. that had been previously deposited into Attorney Dade's client trust account, approximately $105.63 in funds belonging to W.V. remain in Attorney Dade's trust account. This is not

sufficient to pay the remaining delinquent property taxes for the six parcels, the relevant recording fees for the warranty deeds, and the relevant transfer taxes.

¶ 28. In September 2004, the buyer of the properties, D.A., filed a grievance against Attorney Dade. On October 15, 2004, the OLR mailed a copy of the grievance to Attorney Dade and instructed him to respond by November 8, 2004. Attorney Dade did not submit a response. The OLR sent additional letters to Attorney Dade by certified mail and personal service that directed him to submit a written response to the grievance. Attorney Dade still did not respond. The OLR then filed a motion for a temporary suspension of Attorney Dade's license and this court issued an order to show cause on January 21, 2005. When Attorney Dade did not respond to the order, the court temporarily suspended his license to practice law on March 8, 2005. On March 17, 2005, Dade finally submitted his response to the grievance. Based on the OLR's request, the court reinstated Attorney Dade's license on March 29, 2005.

■

¶ 29. On the basis of these facts, the OLR's complaint alleged that by making payments to himself, to his client and to others designated by his client while the buyer of the properties had an interest in the use of those trust account funds to pay outstanding property taxes, recording fees and transfer taxes, Attorney Dade had failed to hold in trust the property of others in his client trust account, in violation of former SCR 20:1.15(a)[4]

---

[4] Former SCR 20:1.15 applied to misconduct committed prior to July 1, 2004. Former 20:1.15(a) provided in relevant part: Safekeeping property.

and former SCR 20:1.15(d).[5] The complaint also alleged that Attorney Dade's failure to submit a written response to the grievance and to respond to the OLR's continued requests for information had violated SCR 22.03(2)[6] and SCR 22.03(6), thereby also violating SCR 20:8.4(f).

¶ 30. Attorney Dade's answer admitted essentially all of the relevant facts in Count 1 (M.F. grievance) and Counts 3 and 4 (D.A. grievance). The answer also admit-

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts . . . .

[5] Former SCR 20:1.15(d) provided: Safekeeping property.

(d) When, in the representation, a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be treated by the lawyer as trust property until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall continue to be treated as trust property until the dispute is resolved.

[6] SCR 22.03(2) provides: Investigation.

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

ted that he had committed the violations of the Rules of Professional Conduct alleged in those counts.

¶ 31. With respect to the E.D. representation addressed in Count 2, Attorney Dade admitted some of the factual allegations, but denied a number of key factual allegations and denied that he had failed to act with reasonable diligence and promptness, as required by SCR 20:1.3. Essentially, Attorney Dade asserted that his original duties to E.D. were generally limited to the defense of the criminal case because he had been appointed to represent her in that case by the circuit court, although he acknowledged that his representation of E.D. at the July 6, 2001 hearing before the family court commissioner was a necessary part of the defense of the criminal action. He claimed that prior to E.D. agreeing to the plea agreement offered by the state, he did review the court file in the prior divorce action, which contradicted E.D.'s claim that she had not been required to pay child support as long as she remained unemployed and that there was no deadline for her to become employed. Attorney Dade also alleged that E.D. knowingly and voluntarily pled guilty to the two felony counts, apparently because she viewed the plea agreement as a means by which she could immediately return to Texas. Attorney Dade further asserted that E.D. was aware that his original representation of her terminated following the entry of her guilty pleas and the imposition of her sentence in the criminal case. He claimed that the reference to the $200 amount was not only to obtain the transcript, but to review it and provide legal advice. Finally, although he admitted not filing a motion to reverse the felony convictions, he asserted that he told E.D. that she needed to pay his outstanding attorney fees in the family court matter before he would take steps toward reopening her criminal case.

¶ 32. Reserve Judge William Eich was appointed as the referee. Judge Eich held a disciplinary hearing on August 30, 2006. He heard testimony from E.D., D.A., and Attorney Dade, and received 9 exhibits into evidence. At the conclusion of the hearing, Judge Eich established a schedule for the parties to submit post-hearing briefs. Attorney Dade did not file any brief.

¶ 33. The OLR's post-hearing brief, in addition to discussing the evidence, requested that the referee recommend a 60–day suspension as the appropriate level of discipline. The OLR also requested that the referee recommend that this court require as a condition of reinstatement that Attorney Dade provide a satisfactory showing to the OLR that he had obtained approved CLE credits dealing with office management and ethics. The OLR's brief did not explain the rationale for this condition of reinstatement or cite any authority for it.

¶ 34. The referee's report adopted the allegations in the OLR's complaint in their entirety as his findings of fact and conclusions of law. Noting the private reprimand that Attorney Dade had received in 1991 was for similar conduct, the referee concluded that a 60–day suspension of Attorney Dade's license was appropriate here. The referee also recommended imposing the reinstatement condition suggested by the OLR.

¶ 35. When reviewing a referee's report and recommendation, we affirm the referee's findings of fact unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay*, 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law on a de novo basis. *See In re Disciplinary Proceedings Against Carroll*, 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. We determine the appropriate level of discipline given the particular facts of

each case, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

■

¶ 36. After having reviewed the record here and in light of Attorney Dade's choice not to challenge the referee's factual findings, we adopt the referee's findings of fact and his conclusions of law that Attorney Dade committed the ethical violations alleged in the four counts of the complaint. Given those findings, we conclude that Attorney Dade's professional misconduct requires that his license to practice law in this state be suspended for a period of 60 days. Moreover, given that Attorney Dade has not objected to the statement of costs filed by the OLR, we determine that he should be required to pay the full amount of costs in this disciplinary proceeding.

¶ 37. We do not, however, impose the condition of reinstatement recommended by the OLR and the referee. While we have the authority to impose reinstatement conditions if doing so is necessary in a particular case, we generally have not imposed reinstatement conditions on disciplinary suspensions that are shorter than six months and that do not require the full reinstatement process contained in SCR 22.29–.33.

■

¶ 38. Moreover, the recommended condition here is vague and does not appear to be tied to the professional misconduct in this case. The recommended condition would require Attorney Dade to make a "satisfactory showing" of CLE credits on office management and ethics, but does not indicate how many credits must be obtained and what subjects the credits should address. Neither Attorney Dade, nor the OLR, nor this

court, will have a sufficient basis to determine whether Attorney Dade has done enough to make such a "satisfactory showing." In addition, "office management" is a broad and ambiguous term. It is also unclear how a course in supervising employees or time management, both of which could be considered to fall within "office management," would deter future misconduct of the type that occurred here. Consequently, we conclude that Attorney Dade should be required simply to comply with the standard process for reinstatement following a suspension that is less than six months. *See* SCR 22.28(2).[7]

¶ 39. IT IS ORDERED that the license of Attorney John R. Dade to practice law in Wisconsin is suspended for a period of 60 days, effective July 13, 2007.

¶ 40. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney John R. Dade shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Attorney Dade to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 41. IT IS FURTHER ORDERED that Attorney John R. Dade shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

---

[7] SCR 22.28(2) provides: License reinstatement.

(2) The license of an attorney suspended for misconduct for less than six months shall be reinstated by the supreme court upon the filing of an affidavit with the director showing full compliance with all the terms and conditions of the order of suspension and the director's notification to the supreme court of the attorney's full compliance.