In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST John Miller CARROLL, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY, Complainant-Appellant,

v.

John Miller CARROLL, Respondent-Respondent.

Supreme Court

*No. 00–1426–D. Submitted on briefs September 17, 2001.— Decided December 6, 2001.*

2001 WI 130

(Also reported in 636 N.W.2d 718.)

For the complainant-appellant there were briefs by *Gregg Herman, Matthew J. Price* and *Loeb & Herman, S.C.,* Milwaukee.

For the respondent-respondent there was a brief by *John Miller Carroll,* Wind Lake.

¶ 1. PER CURIAM. The Board of Attorneys Professional Responsibility (the Board)[1] has appealed from the findings of fact, conclusions of law, and disciplinary

---

[1] Effective October 1, 2000, Wisconsin's attorney disciplinary process was substantially restructured. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed from the Board of Attorneys Professional Responsibility to the Office of Lawyer Regulation and the supreme court rules applicable to the lawyer regulation system were also revised in part. The conduct underlying this case arose prior to October 1, 2000, but the referee's proceeding and the appeal occurred after that date. The complainant in this case will be referred to as "the Board" and all references to supreme court rules will be to those in effect prior to October 1, 2000.

recommendation of a referee that the license to practice law in Wisconsin of Attorney John Miller Carroll be suspended for six months.

¶ 2. The referee's findings and conclusions addressed ten separate counts of professional misconduct set forth in the Board's complaint in this proceeding. One count was dismissed on stipulation of the parties and the referee found that misconduct had occurred with respect to seven of the remaining nine counts, dismissing the remaining two counts.

¶ 3. We adopt the referee's findings of fact and conclusions of law with respect to the seven counts on which misconduct was found to have occurred, as well as count nine which she recommended be dismissed. However, we reject the referee's findings of fact and conclusions of law with respect to count ten which she recommended be dismissed after finding that no misconduct had occurred. Finally, we agree with the referee that the seriousness of Attorney Carroll's professional misconduct warrants the suspension of his license to practice law in this state, although we do not follow her recommendation as to the length of the suspension.

¶ 4. Attorney John Miller Carroll was admitted to practice law in Wisconsin in 1987 and currently practices in Wind Lake. He has been disciplined for professional misconduct on three previous occasions: (1) a 1992 private reprimand for failing to hold funds in trust in which both he and his former law firm claimed an interest; (2) a 1997 private reprimand for performing work for a client after his services were terminated and for misrepresenting that he had filed a motion on behalf of the client; and (3) a public reprimand in 1999 for neglect of a matter, for failing to communicate with a client, and failing to return a retainer; *see* 72 *Wisconsin Lawyer* at 45–46 (July 1999).

665

¶ 5. The Board filed the instant disciplinary complaint against Carroll on April 28, 2000. Attorney Joan F. Kessler was appointed to act as a referee in the matter. In Attorney Carroll's answer to the complaint, he admitted some, and denied other, of the factual allegations contained in the complaint and sought either a dismissal of the matter in its entirety or, in the alternative, a sanction that was commensurate with the severity of the conduct that was found to have taken place.

¶ 6. The Board's allegations of misconduct and the referee's findings dealt with ten counts, involving four separate clients: H.H., J.J., L.L., and R.A.

## CLIENT H.H.

¶ 7. Attorney Carroll represented H.H. who was injured in 1997 in an automobile rear end collision. The matter was ultimately settled with the other party paying $2500 plus a medical bill of $292. Attorney Carroll charged H.H. one-third of the $2500 plus costs of approximately $432 covering filing and service fees for the two lawsuits commenced, the first lawsuit having been improperly served and therefore dismissed.

¶ 8. Count one of the Board's complaint alleged that Attorney Carroll violated SCR 20:1.3,[2] failure to diligently pursue the client's claim, by virtue of having permitted the first lawsuit to expire without service. The referee concluded that misconduct had occurred with respect to this count.

---

[2] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

¶ 9. Count two alleged a violation of SCR 20:1.4(a),[3] failure to keep the client reasonably informed about the status of the matter and failure to promptly comply with reasonable requests for information, by virtue of Attorney Carroll's failure to keep H.H. adequately informed, despite her numerous requests for information, during the course of the litigation. The referee concluded that misconduct had occurred with respect to this count.

¶ 10. Count three alleged a violation of SCR 20:1.5(c),[4] failing to enter into a written contingent fee agreement with the client, by virtue of the alleged absence of such an agreement in this instance. This count was dismissed by the referee upon stipulation of the parties.

¶ 11. Count four alleged a violation of SCR 22.07(2),[5] failure to fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct

[3] SCR 20:1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[4] SCR 20:1.5(c) provides:

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

[5] Former SCR 22.07(2) provided:

upon investigation by the Board, by virtue of Attorney Carroll's failure to disclose to the Board during its investigation that he had filed the earlier lawsuit that was ultimately dismissed and in general misrepresenting the nature of his representation of H.H. The referee concluded that misconduct had occurred with respect to this count.[6]

¶ 12. Neither Attorney Carroll nor the Board have raised on appeal any matters pertaining to the counts involving the representation of H.H., and we adopt the referee's findings and conclusions with respect to these counts.

## CLIENT J.J.

¶ 13. Attorney Carroll represented J.J. in 1998 on a claim against an insurance company involving a motorcycle loss. The company issued a check listing J.J., Attorney Carroll, and the lien holder on the motorcycle as payees. Attorney Carroll's office unsuccessfully at-

---

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

[6] The referee also stated that the misconduct that occurred with reference to counts one, two and four, in the absence of any other violations and given Attorney Carroll's prior disciplinary record, would alone have warranted recommendation of a 30–day suspension, plus a refund of $184 to H.H. for the unnecessary filing fee for the first action.

tempted to deposit the check without obtaining an endorsement from the lien holder. After that Attorney Carroll asked the company to issue a new check deleting the lien holder's name, which it refused to do. Attorney Carroll then gave the original check to J.J., instructing him to obtain the lien holder's signature. J.J. returned it to Carroll with an illegible signature purporting to be that of the lien holder which Attorney Carroll then deposited in his trust account. It was later determined that the lien holder had not actually endorsed the check.

¶ 14. Attorney Carroll testified in the disciplinary proceeding before the referee that he had been told by J.J. that the lien would be satisfied and that is why the lien holder signed the check. However, the referee found that Attorney Carroll should have known that this likely was untrue because he knew that his client had previously lied to him about the status of the lien and he also should have been suspicious when the check was returned with the illegible signature.

¶ 15. The referee found that once Attorney Carroll discovered that his client had lied to him about a significant financial matter, it was unreasonable and irresponsible to deliver a negotiable instrument to him, given the obvious high risk of forgery. The referee further stated that Attorney Carroll should not escape responsibility for the fraudulent conduct he set in motion under these circumstances. Thus the referee concluded that Carroll had committed professional mis-

conduct under SCR 20:8.4(c),[7] engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, count five.[8]

¶ 16. Neither the Board nor Attorney Carroll have appealed any aspect of the referee's determination with respect to this count, and we adopt the referee's findings and conclusions.

## CLIENT L.L.

¶ 17. L.L. had hired Attorney Carroll's firm in 1998 to represent her husband on criminal charges. She assigned $5000 of the $10,000 bail she had posted, upon its release, to Attorney Carroll to cover his retainer. However, she also later paid a $5000 retainer directly to him. When her husband was eventually convicted, $9468 of the bail was released and sent to Attorney Carroll which he deposited in its entirety in his client trust account. On the same day he returned $4468 to L.L. and moved the remaining $5000 of the bail to his business operations account. L.L. demanded return of the $5000 and four months later Attorney Carroll returned $4589.75 to her. (The $410.25 still retained by Attorney Carroll was apparently not a subject of dispute).

¶ 18. Attorney Carroll testified that in his view both the $5000 bail assignment and the $5000 paid directly were supposed to have been a retainer. The referee found to the contrary and concluded that pro-

---

[7] SCR 20:8.4(c) provides that "[I]t is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[8] The referee stated that if count five had been the only misconduct involved it was still sufficiently serious to warrant the recommendation of a 90–day suspension.

fessional misconduct had occurred with respect to four counts alleged by the Board with reference to L.L.

¶ 19. The referee concluded that a violation of count six had occurred, involving a violation of SCR 20:1.15(a),[9] failing to hold client funds in trust, by virtue of Attorney Carroll moving what the client considered to be refunded bail from his trust account into his business operations account.

---

[9] SCR 20:1.15(a) provides:

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

671

¶ 20. The referee further concluded that a violation of count seven had occurred, involving SCR 20:1.15(b),[10] failing to render a full accounting of trust property and failing to properly return client trust funds, by virtue of Attorney Carroll's failure to respond to the client's request to return the refunded bail and to account for the funds within a reasonable period.

¶ 21. Next, the referee concluded that a violation of count eight had occurred, relating to SCR 20:1.15(d),[11] involving the proper treatment of disputed funds as trust property pending resolution of the dispute with a client, by virtue of Attorney Carroll's failure to retain the disputed bail amount in the client's trust account.

---

[10] SCR 20:1.15(b) provides:

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[11] SCR 20:1.15(d) provides:

(d) When, in the representation, a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be treated by the lawyer as trust property until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall continue to be treated as trust property until the dispute is resolved.

¶ 22. Finally the referee recommended dismissal of count nine, pertaining to a violation of SCR 20:8.4(f),[12] declaring professional misconduct to have occurred when an attorney violates a supreme court rule or decision, again relating to Attorney Carroll's retention of the refunded bail after there was a dispute. The referee concluded that this count was duplicative of the other three counts.[13]

¶ 23. Neither Attorney Carroll nor the Board has raised on appeal any issue with reference to counts six through nine, and we adopt the referee's findings and conclusions with respect to these counts.

### CLIENT R.A.

¶ 24. R.A. paid Attorney Carroll $2500 in 1998 to represent her son in a criminal matter. Shortly thereafter she retained a different attorney, discharged Attorney Carroll, and requested a refund of the retainer. He agreed to return $1500 but did not do so. R.A. then called Attorney Carroll's office numerous times during the following nine months but he never responded. Once R.A. filed a grievance with the Board, Attorney Carroll sent her the $1500.

¶ 25. The referee found that a $1500 check had been made out to R.A. soon after Attorney Carroll agreed to refund that amount but that apparently the check was mislaid and never mailed. The referee fur-

---

[12] SCR 20:8.4(f) provides that "[I]t is professional misconduct for a lawyer to: (f) violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[13] The referee indicated that if the three counts relating to L.L. had been the only misconduct involved, she would have recommended a public reprimand.

ther found that Attorney Carroll's bookkeeper voided the check five months later and a new check was issued but never mailed. Even though R.A. did not receive the $1500 for an additional four months, during which her repeated calls to Attorney Carroll were ignored, the referee found that "a new check was promptly issued." The referee recommended dismissal of this count, concluding that no violation of SCR 20:1.16(d),[14] which requires the timely refund of any advance payment of fees had occurred. The referee stated:

> While better office practice would have disclosed the error earlier, I cannot find this to be an intentional violation of supreme court rules. Nor can I find the failure to discover the error sooner to be such negligence as to rise to an ethical violation. Inadvertent misfilings probably occur in every lawyer's office. . . . It is unreasonable to expect perfection in every process. I am satisfied that records maintained in the ordinary course of business in his office establish that Carroll made a good faith effort to promptly return this disputed fee.

¶ 26. The Board has appealed the recommendation on this count. It argues that the referee made a clearly erroneous finding of fact when she concluded that once Attorney Carroll's office discovered the mislaid check to R.A., a new check was "promptly issued." The Board argues that a new check was not issued until

---

[14] SCR 20:1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

approximately four months later and thus the referee should not have concluded that Attorney Carroll made a good faith effort to promptly return the disputed fee.

¶ 27. On a secondary note, the Board questions whether there was sufficient evidence that Carroll had ever mislaid the first check to begin with. The Board contends that the referee should have found that Attorney Carroll fabricated the story about having promptly signed the check but then having mislaid it.

¶ 28. In response, Attorney Carroll simply contends that the referee's findings and conclusions on this count were not in error.

■■■■■

¶ 29. A referee's findings of fact on a disciplinary matter will not be set aside unless clearly erroneous. *Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 562 N.W.2d 137 (1997). Conclusions of law are reviewed de novo. *Disciplinary Proceedings Against Schalow,* 131 Wis. 2d 1, 388 N.W.2d 176 (1986).

¶ 30. The referee's findings and conclusions with respect to this count represent a mixture of both factual findings and legal conclusions. To the extent that findings of fact are involved, we hold that they are clearly erroneous and we do not adopt them.

¶ 31. We make no findings and reach no conclusions on whether Attorney Carroll might have fabricated the story about having promptly signed a refund check and then mislaid it. But even if Attorney Carroll's mislaying of the check for five months was excusable, and even if a new check was indeed "issued" at that time, his failure to actually forward the check to the client for an additional four months, with his repeated failure to respond to R.A.'s inquiries during that time, does not represent a "good faith effort" to "promptly" return the fee.

675

¶ 32. Thus we reject the referee's findings of fact with respect to this count and conclude that a violation of SCR 20:1.16(d) occurred.

## SANCTION

¶ 33. Having concluded that a violation of seven counts has occurred, and having noted that Attorney Carroll had three prior disciplinary actions for which he received reprimands, the referee stated that private discipline apparently had not sufficiently encouraged him to change his conduct:

> The totality of the offenses are more serious than their isolated parts. The continuing pattern of conduct is disturbing. . . . [bad office] practices no doubt contributed to his extraordinarily bad judgment. . . . OLR seeks an unreasonably drastic penalty. To move from *private reprimands directly to a one year suspension is unreasonably harsh.*

(Emphasis added). However, the referee's report to this court correctly indicated at another point that one of the three reprimands had been public. In any event, the referee recommended a six-month suspension.

¶ 34. The Board argues that the referee apparently relied on a misunderstanding of Attorney Carroll's prior disciplinary record in recommending a six-month suspension, i.e., the referee indicated she was hesitant to impose a one-year suspension when the prior reprimands had been private when, in fact, one of Attorney Carroll's three reprimands was public. The Board argues that since the 1992 private reprimand involved one count, the 1997 private reprimand involved two counts, and the 1999 public reprimand involved four counts, along with the original seven (now eight) violations in this case, Attorney Carroll has violated the

676

rules of professional conduct multiple times and that this deserves a one-year suspension.

¶ 35. In support, the Board points to *Disciplinary Proceedings Against Grunewald*, 2001 WI 115, 238 Wis. 2d 881, 618 N.W.2d 188 (one-year suspension for six violations, some similar to this case; attorney previously received a private reprimand and a six-month suspension); *Disciplinary Proceedings Against Evans*, 2001 WI 124, 239 Wis. 2d 279, 618 N.W.2d 873 (two-year suspension for violations including trust account irregularities and fraud, some similar to this case; attorney previously received two private and one public reprimand); *Disciplinary Proceedings Against Jackson*, 221 Wis. 2d 616, 585 N.W.2d 151 (1998) (one-year suspension for multiple violations which the Board argued were not as serious as those committed here; attorney previously received a public reprimand); and *Disciplinary Proceedings Against Hendree*, 211 Wis. 2d 440, 565 N.W.2d 119 (1997) (one-year suspension for multiple violations which the Board characterizes as similar to those here; attorney previously received one public reprimand).

¶ 36. Attorney Carroll argues that a six-month suspension is appropriate here because he views the trust account violations in *Evans* as more severe than those here and because the attorney in *Grunewald* had previously received a six-month suspension.

¶ 37. The recommended sanctions by a referee are accorded no deference by this court. *Disciplinary Proceedings Against Wolf*, 165 Wis. 2d 1, 476 N.W.2d 878 (1991). It is this court's responsibility to impose discipline for professional misconduct. *Disciplinary Proceedings Against Mandelman*, 158 Wis. 2d 1, 460 N.W.2d 749 (1990).

677

¶ 38. It is apparent that the referee erred in her recitation of Attorney Carroll's prior disciplinary history. Even though she stated earlier in her report to this court that he had received two private reprimands followed by a public reprimand, her discussion of the sanction recommendation specifically characterized them as three private reprimands, after which she said it was excessive to move directly from private reprimands to a one-year suspension. In addition, as we previously held, the referee erred in recommending that count ten be dismissed.

¶ 39. It is, of course, unknown what the referee would have recommended even if she had properly recited Attorney Carroll's disciplinary history and if she had found a violation arising out of count ten. It is possible she might have still recommended a six-month suspension given that Attorney Carroll had received no previous suspensions, unlike *Grunewald* where the one-year suspension followed a previous shorter suspension. But we need not speculate on what the referee would have recommended had these errors not occurred. As noted, the recommendation on sanction is not binding on this court in any event.

■

¶ 40. The factors for this court to consider in imposing discipline were stated in *Disciplinary Proceedings Against Charlton*, 174 Wis. 2d 844, 498 N.W.2d 380 (1993): (1) the seriousness, nature and extent of the misconduct; (2) the level of discipline needed to protect the public, the courts, and the legal system from repetition of the attorney's misconduct; (3) the need to impress upon the attorney the seriousness of the misconduct; and (4) the need to deter other attorneys from committing similar misconduct.

¶ 41. In this case we conclude that the one-year suspension sought by the Board is appropriate. First, the misconduct committed by Attorney Carroll was serious and extensive. In particular, it demonstrated a pattern of deception and misdealing with clients that runs to the very heart of the integrity of the attorney-client relationship. Second, given the number of violations found here, as well as the previous violations for which Attorney Carroll was reprimanded, it is apparent that there is a substantial need for others to be protected from his propensity for misconduct. Third, it is equally apparent, given his three prior reprimands, that Attorney Carroll has a substantial disregard for the rules of professional conduct and likely will commit future violations unless a serious sanction is imposed now. Finally, if we allow this misconduct to pass without a substantial sanction, we will have sent the wrong message to the attorneys of this state with respect to their obligation under the rules.

¶ 42. We also agree with the Board that previous cases involving similar conduct and/or disciplinary history have resulted in a suspension of this length, if not longer. For example, in *Hendree,* the attorney only had a single public reprimand prior to the imposition of a one-year suspension for misconduct that included trust account violations similar to those here. Further, *Evans* involved an attorney who, like Attorney Carroll, had previously received two private and one public reprimands, but received a suspension greater than that sought here by the Board for conduct that also included trust account discrepancies.

¶ 43. Accordingly, we conclude that a one-year license suspension under these circumstances is necessary to satisfy the factors we are to consider under *Charlton*.

¶ 44. IT IS ORDERED that the license of John Miller Carroll to practice law in Wisconsin is suspended for a period of one year, commencing January 10, 2002.

¶ 45. IT IS FURTHER ORDERED that within 60 days of the date of this order John Miller Carroll pay the Office of Lawyer Regulation the costs of this proceeding in the amount of $11,433.77, provided that if the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of John Miller Carroll to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 46. IT IS FURTHER ORDERED that, as a condition of reinstatement of his license to practice law, John Miller Carroll shall make restitution to client H.H. in the amount of $184.

¶ 47. IT IS FURTHER ORDERED that John Miller Carroll comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.