In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Gary A. MILLER, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Gary A. MILLER, Respondent.

Supreme Court

*No. 2004AP2056–D. Decided October 25, 2005.*

2005 WI 146

(Also reported in 704 N.W.2d 912.)

¶ 1. PER CURIAM.   We review the findings of fact, conclusions of law and recommendation of referee Judith Sperling-Newton recommending that Attorney Gary A. Miller be publicly reprimanded for failing to disburse funds being held in his trust account after the trial court had ordered the funds to be granted to his client's ex-wife in a divorce property settlement.

¶ 2.   We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We also agree with the referee's conclusions of law, and we agree that the appropriate discipline for the misconduct is a public reprimand. In addition, we conclude that the costs of the proceeding, which are $5486.86, as of July 21, 2005, should be assessed against Attorney Miller.

¶ 3.   Attorney Miller was admitted to practice law in Wisconsin in 1970 and practices in Madison. In 1995

he received a private reprimand for misconduct consisting of misrepresenting he had an attorney's lien as security for his fee in a personal injury matter and failing to promptly deliver his client's file materials to successor counsel.

¶ 4. In August 2004 the Office of Lawyer Regulation (OLR) filed a complaint alleging three counts of misconduct involving two clients. After conducting discovery the OLR withdrew one of the counts. The remaining two counts of the complaint involved Attorney Miller's representation of D.E. in a divorce action filed by D.E.'s wife, J.E. Attorney Miller spends about half of his professional time on family law-related matters and has handled between 500 and 700 divorce cases, 100 to 150 of which were contested.

¶ 5. At the time D.E. retained Attorney Miller, D.E. was represented by another lawyer in a personal injury case. D.E. signed a written retainer agreement with Attorney Miller indicating that Attorney Miller would have a lien on the proceeds of any settlement coming out of the personal injury action for payment of his attorney's fees.

¶ 6. On October 29, 1999, D.E.'s personal injury attorney forwarded $24,000, representing the settlement in the personal injury case, to Attorney Miller. The check was made payable to both D.E. and J.E. Upon receipt of the check, Attorney Miller notified J.E.'s attorney, Walter Stewart, and requested that J.E. sign a release. Attorney Miller informed Attorney Stewart that he would deposit the check into his trust account and that the parties would attempt to resolve all of the remaining issues in the divorce matter. Both D.E. and J.E. endorsed the check and Attorney Miller deposited it into his trust account on December 1, 1999. At the time Attorney Miller gave notice to Attorney Stewart

and deposited the funds into his trust account, a temporary order was in effect in the divorce action.

¶ 7.   A trial of the divorce case was scheduled for July 18, 2000, before Judge Gerald Nichol. Prior to trial the parties tried, but were unable, to resolve three issues:   (1) how the marital property should be divided; (2) how the substantial marital debts should be allocated; and (3) whether J.E. was entitled to any money from the $24,000 personal injury settlement. At the trial, Judge Nichol found there was a loss of taxable income to D.E. and J.E. as a result of the personal injury and that J.E. was entitled to $7329 of the personal injury settlement. The court made the following statement to Attorney Miller:

> So, I'm saying she [J.E.] gets what's in [Stewart's] trust account, he gets what's in the tax refund of 3,600 totally his, whatever the difference, which is like $114, if you're going [to] equally divide them, I'm applying toward attorneys fees and then I'm awarding out of your trust account the 73 and he gets the 13 or whatever it is.

Attorney Miller replied, "Okay. All right."

¶ 8.   After the trial, Attorney Stewart drafted proposed findings of fact, conclusions of law and a judgment of divorce, which were signed by the court on February 6, 2001. The judgment awarded J.E. a "cash settlement payment of $7,329 representing a lost income portion of the March 10, 1998 traffic accident." The judgment did not specifically state that the money should come from Attorney Miller's trust account, but the funds from the settlement check remained in his trust account.

¶ 9.   From the time of the July 2000 divorce trial until March 16, 2001, Attorney Miller's trust account balance attributable to D.E. was $8089. On March 16,

2001, Attorney Miller withdrew $760 from his trust account for attorney's fees, leaving $7329 in trust attributable to D.E., which was the amount awarded to J.E. in the divorce judgment.

¶ 10. On March 19, 2001, D.E. requested the balance of the amount in Attorney Miller's trust account. On March 30, 2001, despite an order from the circuit court awarding J.E. the $7329 remaining in the trust account, Attorney Miller paid D.E. $4929.99 and paid the balance of his attorney's fees in the amount of $2400, leaving a zero balance in the trust account attributable to D.E.

¶ 11. Attorney Stewart sent several letters to Attorney Miller requesting that he forward to J.E. the $7329 which he was supposed to be holding in his trust account. Attorney Miller did not object to complying with that request until May 4, 2001, when he wrote to Attorney Stewart saying Attorney Stewart had overstated or misstated what was required by the judgment of divorce and that J.E. had been awarded only a money judgment. Attorney Miller told Attorney Stewart that D.E. had requested the funds in the trust account and, without an order requiring him to hold the funds, Attorney Miller said he was required to comply with his client's request. Attorney Miller informed Attorney Stewart that it "made better practical sense to file bankruptcy, which would include [J.E.'s] money judgment and [Attorney Stewart's] claims for attorney fees."

¶ 12. On April 1, 2002, Attorney Stewart filed a motion on J.E.'s behalf to find Attorney Miller in contempt of court. The family court commissioner denied the motion, and J.E. appealed. Judge Nichol reviewed the family court commissioner's decision de novo and in October 2002 issued a written decision finding Attorney Miller in contempt of court and or-

dered him to pay J.E. $7329, plus interest from March 30, 2001, and to reimburse her for her attorney's fees and costs within 30 days of the decision. On October 26, 2002, Attorney Miller paid J.E. the amount initially ordered by Judge Nichol, plus interest. Attorney Miller then appealed Judge Nichol's decision to the court of appeals and on September 25, 2003, the court of appeals affirmed.

■

¶ 13.  Referee Sperling-Newton held a hearing in February 2005 and she issued her decision on June 20, 2005. The OLR's complaint alleged and the referee agreed that by failing to disburse to J.E. the $7329 that was being held in Attorney Miller's trust account pending the outcome of the divorce proceeding, which funds the trial court had ordered to be granted to J.E. in the divorce property settlement, Attorney Miller violated former SCR 20:1.15(a).[1]

¶ 14.  The OLR's complaint also alleged and the referee agreed that by failing to comply with the trial court's order to disburse to J.E. $7329 of the proceeds from a personal injury settlement held in Attorney Miller's trust account and instead dispersing such funds to himself and his client, Attorney Miller violated SCR 20:3.4(c).[2]

---

[1] Former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(a) provided in pertinent part: "A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity."

[2] SCR 20:3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

¶ 15.    In discussing the appropriate discipline to be imposed for the misconduct, the referee said that aggravating factors in the case were Attorney Miller's prior disciplinary record consisting of a private reprimand and the nearly three year delay in making restitution to J.E. The referee said a mitigating factor was the fact that Attorney Miller did eventually make restitution to J.E., although he did so three years after the funds were disbursed from his trust account.

¶ 16.    A referee's findings of fact are to be affirmed unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. The record supports the referee's findings of fact and conclusions of law and we adopt them.

¶ 17.    We also agree with the referee's recommendation that a public reprimand is an appropriate level of discipline to impose for the misconduct at issue in this case.

¶ 18.    IT IS ORDERED that Attorney Gary A. Miller is publicly reprimanded for his professional misconduct.

¶ 19.    IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Gary A. Miller pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of an inability to pay those costs within that time,

the license of Attorney Gary A. Miller to practice law in Wisconsin shall be suspended until further order of the court.