In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Douglas KATERINOS, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant,

v.

Douglas KATERINOS,
Respondent.

Supreme Court

*No. 2008AP1637–D.—Decided April 20, 2010.*

2010 WI 28

(Also reported in 782 N.W.2d 398.)

12

¶ 1. PER CURIAM. We review the report and recommendation of Referee John A. Fiorenza that Attorney Douglas Katerinos be publicly reprimanded for professional misconduct and required to pay the costs of this disciplinary proceeding. No appeal from the referee's report and recommendation has been filed. Upon our independent review, we agree that Attorney Katerinos committed professional misconduct that warrants a public reprimand, and we order Attorney Katerinos to pay the full costs of this disciplinary proceeding.

¶ 2. Attorney Katerinos has been licensed to practice law in Wisconsin since 2000. He has an office in his home in Milwaukee. He has not previously been disciplined by this court.

¶ 3. The Office of Lawyer Regulation (OLR) filed a disciplinary complaint against Attorney Katerinos on July 1, 2008, alleging five counts of professional misconduct. The referee conducted an evidentiary hearing on May 5 and 6, 2009, and issued a report on September 10, 2009. Attorney Katerinos filed a letter addressed to the justices of the Wisconsin Supreme Court on September 30, 2009, objecting to the OLR proceeding and various aspects of the referee's report. However, he did not file an appeal. Therefore, we consider this matter pursuant to SCR 22.17(2).[1]

¶ 4. All the claims in the OLR complaint relate to Attorney Katerinos' handling of a small claims dispute on behalf of his clients, M.O. and R.O. M.O. and R.O. failed to pay a $591 bill for dental services performed by Dr. H. After efforts to negotiate a payment plan failed, Dr. H. referred M.O. and R.O.'s unpaid debt to Hawthorne Collection Services, Inc. (Hawthorne). M.O. and R.O. paid $100 toward the balance but then refused to pay any more of the debt.

¶ 5. M.O. and R.O. retained Attorney Katerinos and, in November 2002, commenced a small claims lawsuit against Dr. H. and Hawthorne for an alleged violation of the Wisconsin Consumer Act. The com-

---

[1] SCR 22.17(2) provides:

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

plaint alleged that Dr. H.'s collection efforts amounted to illegal collection activity. Dr. H., represented by Attorney Christopher Drosen, denied liability and counterclaimed, seeking recovery of $491.36, the outstanding balance for the dental services. Dr. H. also sought the recovery of costs for a frivolous claim under Wis. Stat. § 814.025.

¶ 6.   On February 10, 2003, the small claims court commissioner dismissed M.O. and R.O.'s complaint and ordered them to pay Dr. H. the outstanding balance of $491.36. No ruling was made as to Dr. H.'s request for attorney fees.

¶ 7.   M.O. and R.O. and defendant Hawthorne each appealed the commissioner's decision to the circuit court, seeking a trial. Dr. H. filed a motion for summary judgment in the circuit court, seeking a dismissal of M.O. and R.O.'s complaint, an award of $491.36 as found by the commissioner, and an award of costs and attorney fees for filing a frivolous appeal pursuant to Wis. Stat. § 814.025. Hawthorne, represented by Attorney Bernard Stein, filed its own summary judgment motion seeking a dismissal of the complaint and an award of attorney fees and costs under the same statute.

¶ 8.   The Honorable Mel Flanagan conducted a hearing on August 11, 2003. By order dated October 7, 2003, Judge Flanagan dismissed M.O. and R.O.'s complaint as to both defendants. Judge Flanagan specifically found there was no evidence to support M.O. and R.O.'s claim and concluded that the action was frivolous. Judge Flanagan awarded costs against M.O. and R.O. and Attorney Katerinos, jointly and severally, in favor of Dr. H. and Hawthorne in the amounts of $5,437.50 and $2,347.50, respectively.

16

¶ 9. M.O. and R.O. appealed (the "First Appeal"). On June 28, 2004, while the First Appeal was pending, Attorney Katerinos filed a motion in the circuit court to reopen the underlying litigation, alleging fraud pursuant to Wis. Stat. § 806.07(1)(c).

¶ 10. The Honorable Christopher Foley held a hearing on Attorney Katerinos' motion to reopen the litigation on January 31, 2005, and indicated on the record that "[s]ome of this stuff that is cited in support of the proposition that the judgment resulted from fraud is simply silly." Judge Foley denied Attorney Katerinos' motion to reopen the litigation by order dated February 21, 2005, but did not make a specific finding that Attorney Katerinos' motion was frivolous. Attorney Katerinos appealed that order on March 4, 2005 (the "Second Appeal").

¶ 11. Meanwhile, in the First Appeal, Attorney Katerinos filed an appeal brief on July 19, 2004, in which he asked the court of appeals to reverse Judge Flanagan's October 2003 summary judgment order. In that brief Attorney Katerinos made two statements that are relevant in this disciplinary matter. Attorney Katerinos wrote, "There is nothing to support the Defendants' counterclaims for frivolousness. The Defendants misused the trial court and the relationship between Judge Flanagan and Mr. Stein [Hawthorne's attorney] to victimize [M.O. and R.O.] and their counsel." Attorney Stein asserts this statement was misleading because he did not have a "relationship" of any kind with Judge Flanagan, other than as a lawyer appearing before her in court.

¶ 12. Attorney Katerinos also argued in the appeal brief that the circuit court lacked authority to impose costs and fees against him because he was not a named party to the underlying litigation. Attorney Katerinos stated:

17

Respondents' mutual entry of judgments against [M.O. and R.O.'s] counsel are particularly disturbing. Without naming him as a party, or service of process, or any proper motion, Respondents entered judgments in contrast to the circuit court's contrary decision on the record. . . .

These longstanding authorities regarding jurisdiction over a non-party were mistakenly not given consideration and instead the court of appeals misapplied *Ziebell v. Ziebell,* 2003 WI App 127, 265 Wis. 2d 664, 666 N.W.2d 107 (Wis. App. 2003) in affirming the circuit court, despite additional notice that a judgment or order which is void may be expunged by a court at any time.

¶ 13.   Essentially, Attorney Katerinos took the position that the circuit court did not have jurisdiction to impose costs and sanctions on him, personally, because he had not been served in the underlying proceeding. If this argument succeeded, Attorney Katerinos would be exonerated from the costs and fees associated with filing a frivolous pleading but his clients would remain responsible for the costs and fees. Attorney Katerinos did not have a written waiver from M.O. and R.O. to pursue this potentially adverse argument on appeal.

¶ 14.   On November 16, 2004, the court of appeals affirmed Judge Flanagan's decision in all respects and found that the First Appeal, itself, was frivolous. The court of appeals noted that the frivolous finding made in the circuit court was "amply supported by the record before the trial court."[2] The court of appeals noted that

---

[2] The court of appeals stated:

Plaintiffs' claim, that there was an agreement by [Dr. H.] to accept periodic payments, is unsupported by any evidence. It is undisputed that [Dr. H.'s] initial offer to permit [M.O. and R.O.] to suggest a payment method was ignored by [M.O. and R.O.] for

M.O. had admitted the only reason he brought the lawsuit was because his sister-in-law works for Dr. H. and "family doesn't put family in collection."

¶ 15.   The court of appeals remanded the First Appeal to the circuit court to determine the exact amount of attorney fees and costs to be awarded to the defendants. *See Olsen v. Hoffmann,* No. 2003–3500, unpublished slip op. (Wis. Ct. App. Nov. 16, 2004).

¶ 16.   On December 16, 2004, Attorney Katerinos filed a petition for review of the decision on the First Appeal. In the petition for review he reiterated his argument that he could not be held personally responsible for fees and sanctions because the court lacked jurisdiction over him on the theory that he was not a named party to the lawsuit.

¶ 17.   On July 5, 2005, while the petition for review in the First Appeal was pending before this court, and while the Second Appeal was pending in the court of appeals, Attorney Katerinos filed a motion in the circuit court for sanctions against defense counsel, Attorney Drosen and Attorney Stein, for "fraud, perjury, and other alleged malfeasance." This motion was substantially similar in content to the motion to reopen the small claims litigation which the circuit court had already denied, and which was at the time the subject of

---

months. It is undisputed that [M.O. and R.O.] made not a single payment while the proposal was open, and that [M.O.] made no payment at all until contacted by Hawthorne. Even then the partial payment of $100 was initially refused by [Dr. H.]. If there was ever an offer to accept periodic payments, it was withdrawn by referral to collection, and never thereafter renewed by [Dr. H.]. Indeed, the claimed existence of any "agreement" to periodic payments is further refuted by correspondence to [M.O. and R.O.] from both [Dr. H.'s] office and Hawthorne Collection Agency. Summary judgment dismissing the complaint is amply supported by the record. *Olsen v. Hoffmann,* No. 03–3500, unpublished slip op., ¶ 5 (Wis. Ct. App. Nov. 16, 2004).

19

the Second Appeal. Attorney Katerinos claimed that "Defendants' counsels had to resort to . . . *threats of violence* . . . to obtain their void judgments" (emphasis added). Both defense attorneys denied ever threatening Attorney Katerinos in any way. Defense counsel filed motions for protective orders asking the circuit court to bar discovery into this claim pending resolution of the Second Appeal.

¶ 18. Judge Foley conducted a hearing on the motions for protective orders on September 19, 2005. Judge Foley ordered Attorney Katerinos not to issue any discovery requests pending resolution of the matters then pending before the Wisconsin Supreme Court and the Wisconsin Court of Appeals, and granted defense counsels' motions for protective orders. Attorney Katerinos was ordered to pay costs to the defendants on the motion and was directed that these costs should be borne by him personally.

¶ 19. On October 17, 2005, Judge Foley conducted a hearing on Attorney Katerinos' motion for sanctions. Judge Foley noted the defendants had prevailed in small claims court, the circuit court, and the court of appeals, and the supreme court had denied Attorney Katerinos' petition for review on October 3, 2005. Judge Foley found no basis for the sanctions sought by Attorney Katerinos and denied the motion. Judge Foley directed the defendants to present affidavits with calculations of their costs and attorney fees. On November 21, 2005, Judge Foley issued written orders confirming his September 19 and October 17 rulings. Judge Foley ordered Attorney Katerinos to pay Attorneys Drosen and Stein the sums of $1,222 and $862.50, respectively, on or before January 15, 2006.

¶ 20. Judge Foley conducted hearings on November 28 and 30, 2005, to determine the costs due the

20

defendants for attorney fees incurred in defending the First Appeal, together with other motion costs. In January 2006 Judge Foley issued a written order awarding Dr. H. a total of $6,139.10 in fees and costs and awarded Hawthorne a total of $2,222.93. Judge Foley apportioned responsibility for these costs on a 90/10 basis between Attorney Katerinos and M.O. and R.O., respectively. Orders for judgment on these amounts were filed on February 23 and 24, 2006, and judgments entered on February 28, 2006. On April 7, 2006, Attorney Katerinos appealed the orders for judgment, which included by reference the November 21, 2005, orders denying his motion for sanctions and imposing costs in favor of the other attorneys ("Third Appeal").

¶ 21. On April 11, 2006, the court of appeals issued a decision in the Second Appeal, affirming the circuit court on all counts. The court of appeals flatly rejected Attorney Katerinos' claims that the judgment entered against him and his clients was based upon the defendants' fraudulent activities, stating:

> This court agrees with the trial court's conclusions made on the record that there is "nothing here to suggest that this judgment resulted from fraud perpetrated on the Court, by any of the lawyers, by any of the defendants, by any representatives of the defendants, et cetera.
>
> Some of this stuff that is cited in support of the proposition that the judgment resulted from fraud is simply silly."

*Olsen v. Hoffman,* No. 2005AP644, unpublished slip op., ¶ 14 (Wis. Ct. App. Apr. 11, 2006) (stating, *inter alia,* "It is time for this litigation to come to an end."). The court of appeals also found that the Second Appeal

21

was frivolous and remanded the matter to the circuit court for a determination of costs and attorney fees owed to the defendants on the Second Appeal. On May 3, 2006, Judge Foley ordered judgment in the amount of $1,147.50 in favor of Dr. H. for costs associated with the Second Appeal.

¶ 22. Attorney Katerinos reached a settlement for the fees and costs and personally paid them in full. In August 2006 Attorneys Katerinos, Stein, and Drosen reached a settlement and executed a stipulation and order of dismissal upon conditions relating to Attorney Katerinos' payment of sanctions to the defendants. The Third Appeal was voluntarily dismissed in late August 2006.

¶ 23. Attorney Katerinos' conduct in this small claims litigation gave rise to this disciplinary proceeding. The OLR complaint alleged five counts of professional misconduct:

- *Count One.* By over-litigating this small claims case for two and one-half years to his clients' financial detriment, Attorney Katerinos violated SCR 20:1.1.[3]

- *Count Two.* By arguing during the First Appeal a position that was adverse and detrimental to his clients' interests and was potentially favorable to Attorney Katerinos' own interest, Attorney Katerinos violated former SCR 20:1.7(b).[4]

- *Count Three.* By filing a motion for sanctions in September 2005 that generally repeated grounds Attor-

---

[3] SCR 20:1.1 provides, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[4] Former SCR 20:1.7(b) (effective through June 30, 2007) provided:

ney Katerinos had previously (and unsuccessfully) raised in a motion to reopen that the circuit court had already denied, Attorney Katerinos violated SCRs 20:3.1(a)(l) and (3).[5]

- *Count Four.* By making a baseless statement indicating the defendants had misused their "relationship" between the presiding judge and one of the defense attorneys to victimize the plaintiffs and plaintiffs' counsel when, in fact, no relationship between the judge and the defense attorney existed, Attorney Katerinos violated SCR 20:8.2(a).[6]

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[5] SCR 20:3.1(a)(1) and (3) provide, in pertinent part, that in representing a client, a lawyer shall not:

(1) knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law; . . .

(3) file a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of the client when the lawyer knows or when it is obvious that such an action would serve merely to harass or maliciously injure another.

[6] SCR 20:8.2(a) provides as follows:

A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory

23

- *Count Five.* By making a baseless statement in a motion for sanctions to the trial court filed on or about June 30, 2005, that the defense attorneys had made "threats of violence" against him, Attorney Katerinos violated former SCR 20:3.3(a)(1).[7]

¶ 24. The OLR sought a public reprimand and imposition of costs. The referee conducted an evidentiary hearing in May 2009 and requested post—hearing briefs. The referee filed his report on September 10, 2009. As indicated earlier, although he wrote a lengthy letter to the justices of this court dated September 30, 2009, Attorney Katerinos did not formally appeal the referee's report. Therefore, we consider this matter pursuant to SCR 22.17(2).

¶ 25. The referee concluded that OLR met its burden of establishing the allegations in the complaint by clear, satisfactory, and convincing evidence and recommended imposition of a public reprimand. We agree. We have carefully reviewed the record in this matter, and the record evidence supports the referee's findings of fact and conclusions of law with respect to each allegation of misconduct.

■

¶ 26. Attorney Katerinos continued to pursue the small claims litigation—over a bill of less than $500—despite clear warnings from the trial court and the court of appeals that his arguments were "silly" and that further discovery would be "frivolous on its face." Indeed, at one point the circuit court advised Attorney

officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

[7] Former SCR 20:3.3(a)(1) (effective through June 30, 2007) stated a lawyer shall not knowingly "make a false statement of fact or law to a tribunal . . . ."

24

Katerinos that if he pursued discovery on his third motion for sanctions the court would "anticipate putting you [Attorney Katerinos] in jail for it." The referee made the following findings:

> The Findings clearly indicate that Attorney Katerinos was very aggressive in this case and refused to accept the decision of the trial court and decisions of the Court of Appeals. His action in the case was clearly frivolous. He had a fixation on his interpretation of the Wisconsin Consumer Act and would not tolerate any other position but his. In the disciplinary hearing he spent more time on substantiating his position in the small [claims] case than defending himself on the five counts in the Disciplinary Complaint. He clearly violated Count 1, and I so find.

¶ 27. We adopt these findings and agree that Attorney Katerinos violated SCR 20:1.1.

¶ 28. We also agree that the record supports a finding that Attorney Katerinos violated SCR 20:1.7(b) when he attempted to exonerate himself from a judgment for sanctions imposed on Attorney Katerinos and his clients jointly without having obtained a waiver from his clients before pursuing this argument. We agree with the referee's conclusion:

> Mr. Katerinos' attempts to extricate himself of the frivolous fees, would have put the burden of all the fees on his clients. This was a direct conflict with his clients' interest. He had not procured a waiver of the conflict from his clients. Mr. Katerinos violated SCR [20:1.7(b)].

¶ 29. Attorney Katerinos also violated SCRs 20:3.1(a)(1) and (3) when he filed a motion to reopen the litigation on June 28, 2004, based on an allegation

of fraud, and when he filed a motion for sanctions on July 5, 2005. When Attorney Katerinos filed his motion for sanctions he had already lost a motion to reopen the litigation in the circuit court. That motion had raised almost the same issue of attorney misconduct. As such, Attorney Katerinos' motion for sanctions asserted a duplicative position that "would merely serve to harass or maliciously injure other individuals, here the defendants and the defendants' counsel." We agree with the referee's observation that:

> During the course of the litigation Mr. Katerinos repeated motions that had already been heard and disposed of by the Court. One such incident was the motion for sanctions filed by him in [July 2005]. This matter had been raised in a motion to reopen that the Circuit Court had already denied. Mr. Katerinos violated [SCRs 20:3.1(a)(1) and (3)].

■ 30. The referee concluded, and we agree, that Attorney Katerinos violated SCR 20:8.2(a) with respect to statements included in the brief he filed with the court of appeals on July 19, 2004. In this brief Attorney Katerinos said "[t]he Defendants misused the trial court and the relationship between Judge Flanagan and Mr. Stein to victimize [R.O. and M.O.] and their counsel . . . ." At the evidentiary hearing, Attorney Stein denied he had any type of "relationship" with Judge Flanagan other than that of an attorney who appeared in the judge's courtroom on legal matters. The referee found that Attorney Katerinos could not substantiate this statement and, as such, the referee concluded that Attorney Katerinos' assertion that there was a "relationship" involving Judge Flanagan and a defense attorney was false and related to the integrity of the judge. More specifically, the referee stated:

26

The statement by Mr. Katerinos that Judge Flanagan and Mr. Stein had a relationship that was detrimental to [his clients'] case had no basis in fact. The statement was careless and was a disservice to Judge Flanagan and Attorney Stein. He just made the statement without presenting any factual basis. Brash statements with no foundation have no place in the Court System. Mr. Katerinos violated SCR 20:8.2(a).

¶ 31. Finally, we agree that Attorney Katerinos violated ethical standards when he accused defense counsel of harassing M.O. and R.O., pilfering them financially, and denying their day in court. For example, Attorney Katerinos stated, "Defendants' counsels had to resort to fraud, perjury, threats of violence, and intentional misstatements to obtain their void judgments." A review of the record reflects that both Attorneys Drosen and Stein denied making any threats of violence towards Attorney Katerinos. Attorney Katerinos claimed that Stein "shook his fist" in the face of Attorney Katerinos and "mumbled" words about the prospects of collecting money from his client. Attorney Stein denied this occurred.

¶ 32. The referee agreed that by describing the alleged conduct as "threats of violence" Attorney Katerinos mischaracterized to the court what had occurred. The referee stated, and we agree that:

The statement made in the motion for sanction[s] [filed] on [July 5, 2005] that the defense attorneys had made threats of violence against Mr. Katerinos has no foundation. Mr. Katerinos violated SCR 20:3.3(a)(1).

¶ 33. A referee's findings of fact will not be overturned unless clearly erroneous. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. We independently review the referee's legal conclusions. *Id.*

¶ 34. As this matter was submitted to the court without appeal, Referee Fiorenza's findings and conclusions are unchallenged and they are also supported by the record. We therefore approve and adopt the referee's findings and conclusions regarding Attorney Katerinos' misconduct.

¶ 35. Although Attorney Katerinos declined to appeal the referee's report he nonetheless sent a 17–page letter to each justice. He challenges many aspects of the referee's recommendation which he describes as "rife with numerous errors, omissions, and misrepresentations." His assertion that "[t]he lack of respect and regard for Wis. Stat. § 427.105 is 'shockingly not right' . . . ," registers his disagreement with credibility determinations made by the referee. Attorney Katerinos further maintained that "OLR *repeatedly* interfered with the underlying small claims case while the action was still pending in the court system" (emphasis supplied). He states, *inter alia:*

> While acting as a shadow party, OLR repeatedly abused the power and resources of the State of Wisconsin to derail the pending case and obtain the penalizing outcome it desired to punish the Respondent.

He then provides the court with an extremely lengthy list that he emphasizes is "not intended to be comprehensive" of the errors and omissions he perceives in the referee's report.

¶ 36. Attorney Katerinos explicitly declined to appeal the referee's report and recommendations. Therefore, we need not, and will not, address the many and varied complaints set forth at length in his letter to this court.

¶ 37. We will note, however, that many of Attorney Katerinos' objections and claims of purported error

28

or omission are grounded in his own belief in the validity of his legal argument, notwithstanding the fact that several circuit and appellate courts have advised him that his arguments lack merit. Indeed, the letter to this court reflects a disturbing lack of awareness or respect for appropriate legal practice and procedure. As the OLR stated in written submissions, "[w]ere every such lawsuit to be handled in a similar fashion, our court system would come to a grinding halt."

¶ 38.   We accept the referee's recommendation for a public reprimand and we impose the full costs of this proceeding.[8]

¶ 39.   IT IS ORDERED that Douglas Katerinos is publicly reprimanded as discipline for professional misconduct.

¶ 40.   IT IS FURTHER ORDERED that within 90 days of the date of this order, Douglas Katerinos pay to the Office of Lawyer Regulation the costs of this proceeding. If costs are not paid within the time specified and absent a showing of his inability to pay the costs within that time, Douglas Katerinos' license to practice law in Wisconsin shall be suspended until further order of the court.

---

[8] Supreme court rule 22.24 governs the assessment of costs. Under SCR 22.24(1m), the court's general policy is to impose costs on the respondent. To award less than full costs, the court must find "extraordinary circumstances." *Id.* Attorney Katerinos has not formally objected to the costs and has not claimed extraordinary circumstances to justify the imposition of less than full costs. We conclude Attorney Katerinos shall bear the entire costs of the proceedings. On September 29, 2009, the OLR filed a statement of costs in this matter totaling $20,543.75.