In the Matter of Disciplinary Proceedings Against
David J. Winkel, Attorney at Law:

Office of Lawyer Regulation, Complainant,

v.

David J. Winkel, Respondent.

Supreme Court

*No. 2003AP2935–D. Decided December 13, 2005.*

2005 WI 165

(Also reported in 706 N.W.2d 661.)

¶ 1. PER CURIAM. We review the report and recommendation of the referee that Attorney David J.

Winkel be publicly reprimanded for professional misconduct, that he be ordered to pay restitution in the amount of $934, and that he be ordered to pay the costs of this proceeding.

¶ 2. On October 27, 2003 the Office of Lawyer Regulation (OLR) filed a complaint and order to answer against Attorney Winkel. The complaint alleged two counts of professional wrongdoing. Count I alleged that Attorney Winkel violated SCR 20:8.4(c)[1] by submitting a fee request to the Social Security Administration (SSA) that misrepresented the amount of time spent by his firm in handling a case on behalf of client J.T. Count II alleges that Attorney Winkel violated SCR 20:1.5(c)[2] by failing to enter into a written contingency fee agreement with J.T. and B.T. concerning the social security matter. Winkel submitted an answer that denied the majority of the substantive allegations and denied any wrongdoing.

¶ 3. Attorney Curry First was appointed as referee in the matter. Referee First conducted a hearing on December 1 and 2, 2004. The OLR and Attorney Winkel's counsel thereafter filed post-hearing briefs and proposed findings of fact and conclusions of law.

¶ 4. Referee First filed his report and recommendation on June 21, 2005. In summary, the report found

---

[1] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[2] SCR 20:1.5(c) provides in part that

[a] contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

that Attorney Winkel had not violated ethical rules concerning the execution of a contingency fee agreement as alleged in Count II, but had improperly misrepresented his firm's time and billing charges in submitting a fee application to the SSA as alleged in Count I. The referee's report agreed with the OLR's recommendation that a public reprimand be issued to Attorney Winkel on the billing issue.

¶ 5. Neither Attorney Winkel nor the OLR appealed from the referee's report. Accordingly, this court's review proceeds pursuant to SCR 22.17(2).[3] The referee's findings of fact are to be affirmed unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). The referee's conclusions of law, however, are subject to de novo review. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718.

¶ 6. Following our review of the record, we approve and adopt the referee's findings of fact and conclusions of law and determine that the seriousness of Attorney Winkel's misconduct warrants the imposition of a public reprimand. We also agree with and adopt the referee's recommendation that Attorney Winkel be ordered to pay restitution to J.T. in the amount of $934.

---

[3] SCR 22.17(2) provides: Review; appeal.

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

¶ 7. Attorney Winkel was admitted to practice in Wisconsin in 1984. He is the sole shareholder in his firm, which is located in Neenah. Attorney Winkel's prior disciplinary history includes a public reprimand in April 1998 for failing to adequately prepare to represent his clients and to explain their legal matters to them, for failing to competently represent a client in an estate matter, for misrepresenting that he had prepared a document, for failing to respond to successor counsel's requests, and for failing to respond to the disciplinary investigation. *See In re Disciplinary Proceedings Against Winkel,* 217 Wis. 2d 339, 577 N.W.2d 9 (1998).

¶ 8. The referee made the following factual findings. J.T. and B.T., husband and wife, initially became clients of Attorney Winkel's firm in 1995 in connection with a tax matter. At that time, they signed a retainer agreement that provided for charges on an hourly basis. The retainer agreement did not mention any representation concerning a social security disability claim.

¶ 9. Attorney Winkel directed the work on the tax file to his associate. At some point in the next several months, Attorney Winkel's law firm was also engaged to represent J.T. concerning a social security disability claim. As found by the referee, Attorney Winkel urged his associate to have J.T. and B.T. sign a contingency fee agreement for this new matter. Attorney Winkel testified that he recalled the associate telling him that J.T. and B.T. had signed a contingency fee agreement. At the hearing, the associate did not recall whether the clients had in fact signed such an agreement or whether he had told Attorney Winkel that they had. Ultimately, no such agreement was found. Many of the associate's time

slips, however, indicate through a billing code that his work on the social security matter was on a contingency fee basis.

¶ 10. In January 1997, an attorney advisor for the SSA notified J.T. and Attorney Winkel's associate that she had determined that J.T. was eligible for benefits. Within a few weeks after this notification, the associate left Attorney Winkel's firm to form his own practice. Shortly after the associate left Attorney Winkel's firm, Attorney Winkel received a favorable final decision from the SSA. The referee found that Attorney Winkel then "pressured" J.T. and B.T. to continue the social security matter with Attorney Winkel's firm instead of transferring it to the associate's new firm. Attorney Winkel also convinced them to agree to present the fee petition to the SSA as a contingency fee arrangement because Attorney Winkel claimed that to do otherwise would delay the final resolution of J.T.'s social security claim and his receipt of back benefits.

¶ 11. Prior to meeting with J.T. and B.T., Attorney Winkel prepared a draft fee petition to the SSA showing total hourly fees of $6250 and requesting a 25 percent contingency fee (which would have equaled a fee of $5813.45). Attorney Winkel showed this draft petition to J.T. and B.T. at their in-person meeting. B.T. acknowledged that her husband signed the fee application, and understood and agreed to Attorney Winkel receiving a 25 percent contingency fee on the social security recovery.[4]

¶ 12. Because no contingency fee agreement had been filed with the SSA prior to the award of benefits, as described above, Attorney Winkel was required to submit a fee petition that itemized the amount of time

---

[4] J.T. did not testify at the hearing.

spent on each service provided during the case. Attorney Winkel prepared the itemized fee petition by reconstructing the amount of time that he believed the associate would have spent on the tasks that were performed. Attorney Winkel allegedly performed this reconstruction by estimating how long it would have taken him to perform the same task.

¶ 13. Attorney Winkel testified that he prepared the fee petition using this reconstruction methodology because his former associate had a history of failing to record or of underrecording the time that he spent on a file. Attorney Winkel claimed that certain tasks performed on the J.T. social security file were not contained in the associate's prior time slips. Attorney Winkel, however, never attempted to contact his former associate concerning his time entries or the work performed on the file. The referee concluded that Attorney Winkel's failure to consult his former associate stemmed from Attorney Winkel's inappropriate conduct in pressuring J.T. and B.T. to keep the social security matter with Attorney Winkel.

¶ 14. Ultimately, Attorney Winkel's reconstructed fee application showed 30 billable hours while the original time slips (as shown on informational invoices sent to J.T. and B.T.) showed a total of 12.8 billable hours for the same time period.

¶ 15. At the hearing, the associate testified that he believed that his time slips and the original invoices sent to J.T. and B.T. were accurate concerning the work performed and fees charged. He stated that he did not recall any problems with failing to record all of his time on the J.T. social security matter, although he admitted having discussions with Attorney Winkel generally about failing to capture all of his time.

¶ 16. The referee found that Attorney Winkel had disclosed to the SSA's representative that his fee petition was based on a reconstruction of his firm's hourly charges. Ultimately, the SSA appears to have handled the matter as if it were a contingent fee arrangement. In contingency situations, social security regulations provide for an award of attorney's fees of either 25 percent of the recovery or $4000, whichever is less. In this instance, social security initially awarded Attorney Winkel fees of $5813.45 based on a calculation of 25 percent of the recovery, but then corrected its error and reduced the attorney's fees to $4,000.

¶ 17. The referee concluded that Attorney Winkel's reconstruction methodology had resulted in him misrepresenting to the SSA the amount of time spent and the fees earned by his firm in prosecuting J.T.'s social security claim. The referee focused on two facts that pointed in the direction of the fee application overstating the fees earned.

¶ 18. First, the initial time slips submitted by the associate (and billed on invoices to J.T. and B.T.) showed a total billable amount of 12.8 hours while the reconstructed fee petition showed a total of 30 billable hours for the same time period. The referee concluded that since the amount of time more than doubled without adequate explanation by Attorney Winkel, the fee application misrepresented the overall time actually spent on the file. Usually, the exercise of billing judgment results in the reduction of time whereas here it resulted in the time being more than doubled.

¶ 19. Second, the referee found that Attorney Winkel's intentional failure to consult his former associate concerning the fee application supported the conclusion that the fee application was overstated. Indeed, Attorney Winkel admitted that, in certain circum-

stances, without his former associate's input he had no verifiable way of knowing whether the associate's time was inaccurate. The referee found that Attorney Winkel failed to explain why he increased many of the associate's time entries. The referee pointed out nine examples of such enhancement, and noted that logic and experience support only one situation where it appears that the associate may have underreported his time. Moreover, if Attorney Winkel, in preparing the fee application, was estimating how long it would have taken him to perform the identified tasks, the amounts should not have increased by such a large amount given the fact that Attorney Winkel was much more experienced than his associate at prosecuting social security appeals.

¶ 20. In light of the more than doubling of his firm's contemporaneous time entries without adequate explanation, the referee concluded that Attorney Winkel had misrepresented his firm's hourly fees on his initial application to the SSA in violation of SCR 20:8.4(c).[5]

¶ 21. Based on our review of the matter, the referee's findings concerning the fee application overstating the number of hours spent and the amount of fees earned are not clearly erroneous and are adopted

---

[5] Following the initial award of back benefits, Attorney Winkel successfully petitioned the SSA for a modification of the award based on a different beginning date. Attorney Winkel then sought $1039.50 for the fees he earned on this "phase two" of the appeal. The SSA awarded Attorney Winkel a fee of only $100, "giving consideration to the limited services provided by the attorney in prompting a reopening and revision." The referee concluded that, although the SSA drastically reduced the requested fee, there was no misrepresentation involving this "phase two" fee request.

by the court. They support the referee's legal conclusion that Attorney Winkel misrepresented those items to the SSA in violation of SCR 20:8.4(c), and we agree with that conclusion. Although there may in fact have been a problem with the associate underreporting his time in certain instances, the bottom line is that Attorney Winkel's fee application more than doubled the amount of time his firm had actually recorded on the matter and Attorney Winkel failed to adequately explain the basis for many of the "enhanced" entries. The amount of the increase is simply too large to be believable.

¶ 22. With respect to the issue of the contingent fee agreement, the referee concluded that the OLR failed to prove by clear, satisfactory and convincing evidence that Attorney Winkel violated SCR 20:1.5(c) by failing to obtain a written contingent fee agreement. Although no signed written agreement could be located after the matter was concluded, Attorney Winkel's firm always handled social security appeals on a contingency basis and Attorney Winkel told the associate to handle the J.T. social security matter in that way. The associate subsequently told Attorney Winkel that he had entered into a contingency agreement with J.T. and B.T. and indicated on his time slips that certain entries were for a social security matter, which the billing personnel in the firm always handled as a contingency arrangement. Moreover, the fee application submitted to the SSA that was signed by J.T. referred to a 25 percent contingency agreement with expenses to be reimbursed by the client. The SSA ultimately accepted the fee petition with the contingent fee arrangement. The referee concluded that given this evidence, the OLR had failed to prove under the required standard of clear, satisfactory

and convincing proof that Attorney Winkel had failed to obtain a written contingency agreement.[6]

¶ 23. We find that the referee's factual findings on this issue are not clearly erroneous. Although Attorney Winkel, as the sole owner of the firm, should have ensured that a copy of a signed contingent fee agreement was maintained in the firm's file, we agree with the referee's legal conclusion that the OLR failed to prove a violation of SCR 20:1.5(c) by clear, satisfactory and convincing evidence in this case.

¶ 24. Having concluded that Attorney Winkel violated SCR 20:8.4(c), we address the appropriate discipline to be imposed. As sought by the OLR, the referee recommended that Attorney Winkel be given a public reprimand. Attorney Winkel's conduct did involve misrepresentation as to fees, which was designed to inure to his financial benefit. The violation of the duty of candor also occurred in connection with a fee petition to a federal agency. Moreover, the referee concluded that Attorney Winkel had not shown appropriate remorse for the wrongdoing.

¶ 25. On the contrary side, the referee believed that the potential for rehabilitation supported the issuance of a public reprimand rather than a suspension. The referee also noted that the associate's failure to record his time accurately and his exit from Attorney Winkel's firm were partially responsible for the problems with the fee application. While those facts do not excuse Attorney Winkel's more than doubling of his

---

[6] SCR 22.16(5) states that "[t]he office of lawyer regulation has the burden of demonstrating by clear, satisfactory and convincing evidence that the respondent has engaged in misconduct."

firm's charges, they do explain to some degree why Attorney Winkel thought he needed to reconstruct his firm's time in preparing the fee application and do lend support to the issuance of a public reprimand rather than a suspension.

¶ 26. Having considered the nature of Attorney Winkel's misconduct, the need to impress upon him the seriousness of the misconduct and the need to protect the public, the courts and the legal system from such conduct by Attorney Winkel or other attorneys, we agree that a public reprimand is appropriate discipline for Attorney Winkel's misconduct in this case.

¶ 27. In addition to the issuance of a public reprimand, the referee also recommended that the court order Attorney Winkel to pay restitution to J.T. Ultimately, the SSA awarded Attorney Winkel $4000 in fees. Had Attorney Winkel submitted the amount of fees undisputedly earned by his firm (using the contemporaneous time entries and the prevailing hourly rates at the end of the representation), the referee concluded that Attorney Winkel's firm would have been entitled to a fee of $3066 out of J.T.'s recovery. Consequently, the referee concluded that restitution in the amount of the difference between those two figures, $934, would be appropriate. We agree that Attorney Winkel should pay restitution to J.T. in the amount of $934.

¶ 28. Finally, the referee recommends that Attorney Winkel be ordered to pay the costs of the disciplinary proceeding, which were $9007.45, as of July 11, 2005. We agree that Attorney Winkel should pay the costs of the proceeding.

¶ 29. IT IS ORDERED that Attorney David J. Winkel is publicly reprimanded for his professional misconduct.

¶ 30. IT IS FURTHER ORDERED that within 30 days of the date of this order, Attorney David J. Winkel shall pay restitution to J.T. in the amount of $934.

¶ 31. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney David J. Winkel pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of an inability to pay those costs within that time, the license of David J. Winkel to practice law in Wisconsin shall be suspended until further order of the court.